## Louisville Taxicab & Transfer Co. v. Smallwood.

November 11, 1949.

Robert L. Page for appellant.

Geo. B. Ryan and Frank H. Dyer for appellee.

JUDGE HELM—Affirming.

Appellee, Aud Smallwood, instituted this action against appellant, Louisville Taxicab & Transfer Company, and James Royalty, to recover damages for injuries alleged to have been sustained by riding in one of appellant's taxicabs. A jury awarded appellee $2000 damages—$1200 against Royalty, which he has paid, and $800 against appellant. From a judgment entered on that verdict, the Taxicab Company prosecutes this appeal.

About 9 p. m., February 10, 1947, appellee was a passenger in a taxicab of appellant, traveling south—in the east lane—on Third Street, a one way, three-lane street in Louisville. Royalty was traveling south in the middle lane. Royalty stopped for a red light at the Walnut Street intersection. When the light turned green, Royalty started to make a left-hand turn at this intersection. Royalty says he looked into his rear mirror and that there was nothing directly behind him; that just as he was easing out very slowly—about five miles per hour—to make the turn, he saw out of the corner of his left eye the cab alongside of him. Until that moment he had not noticed anything in the lane to the left of him. He did not give any signal of his

intention to turn left. He says that he was in the wrong lane to make a left turn. Royalty says that he had just angled slightly and that the front of his car had gotten just beyond the white line when the cab collided with him; the right front fender of the cab came in contact with the left front fender of his car; there was no appreciable impact of the cars—just a brushing effect on the fender; the cab "just barely pushed his fender in a little bit." The estimate of the damage to the cab was $5, and to the Royalty car, $15. Royalty says that in his opinion the force of the impact was not sufficient to injure anyone.

According to the version of appellee, Smallwood, 45 years of age, the only passenger in the cab and riding on the front seat of the cab, the cab came to a stop at Third and Walnut Street, a closely built up district, because the traffic light was red against south bound traffic; when the cab was within about 20 feet of the intersection, the stop light turned yellow; when the light turned green, the cab traveled 10 or 15 feet at around 25 or 30 miles per hour; "he speeded up when the light turned and he aimed to cut around the car, it seemed like;" the cab "traveled just a few feet when the two cars came together;" the cab driver "put on his brakes real quick and throwed me against the windshield and throwed me back in the seat and hurt my back and head." Smallwood told the police officers who were called that he did not think he was hurt enough to go to a doctor or to the hospital. After the collision and investigation, he was taken by the cab driver to the Strawberry yards of the Louisville & Nashville Railroad Company in south Louisville, where he had been employed for two years as an oiler. He did not know that he was injured until he got out of the cab and started to walk to the yards. He was on duty that night as an oiler but his buddies did his work for him. He found he was not able to do his work, which required stooping and lifting; that "I could not pull those lids * * * My back was hurting me too bad." He secured a 15-day leave of absence, went back and tried to continue his work; he would "work a day or two * * * and lay off a day or two" until he found that he was unable to do the work and resigned from the L. & N. on March 25, 1947. Later, beginning in June, he worked some eight or ten weeks for the Pendennis Club. There he

had trouble with his back "all the time." He resigned and claims he had not been able to do his usual work up until the time of the trial on May 4, 1948.

The cab driver was out of the state and did not testify at the trial.

Appellant urges as grounds for reversal: (1) there was not sufficient evidence to take the case to the jury as against the taxicab company, and (2) if there was sufficient evidence to take the case to the jury, the verdict was excessive.

Officer Regenauer states that the speed limit at Third and Walnut, a closely built up business district, was 20 miles an hour. KRS 189.390(1) (a) provides: "Where a highway passes through a closely built-up business portion of any city, if the rate of speed of motor vehicles on the highway exceeds twenty miles per hour, it shall be prima facie evidence of unreasonable and improper driving." Royalty, by turning left without giving a signal, was negligent, but he was moving very slowly and crossed the white line to his left only about two feet when he stopped. It appears that Third Street is some 30 feet wide. Royalty states that in his opinion the taxicab had room to go around him.

It appears that the cab driver put on his brakes immediately before the collision and stopped suddenly. Royalty did not see the cab until immediately before the collision. He was unable to give any estimate of the speed of the taxicab. Appellee states that the cab driver was going 25 to 30 miles an hour at the time he suddenly put on his brakes. This speed was in excess of the speed limit at that place. There is no other evidence as to the speed of the cab at the time the brakes were applied.

It was the duty of the driver of the taxicab of appellant, a common carrier for hire, to exercise the highest degree of care in the operation of the taxicab so as not to come into collision with other vehicles using the street at that time and place. This duty included the duty to have the taxicab under reasonable control, to operate it at a rate of speed that was reasonable and proper, and to keep a lookout ahead for other vehicles

in front of him or so near thereto as to be in danger of collision.

In 7-8 Huddy, Automobile Law, pages 372, 373, it is said: "In case of the concurring negligence of two persons resulting in an injury to an occupant of an automobile, * * *, Two drivers, under such circumstances, may be joined as defendants, although there is no common duty, common design, or concert of action between them, and although one of the drivers may have been far more negligent than the other, * * *." In 5 Blashfield's Cyclopedia of Automobile Law and Practice, sec. 3154, page 317, it is said: "* * a plaintiff, injured while riding as a passenger in a public taxicab in a collision between the taxicab and a motorcar privately owned, both drivers being negligent, may join as defendants the operator of the taxicab and the owner of the motorcar, notwithstanding that before the accident they owed the plaintiff different degrees of care, one owing him the highest degree of practical care and the other ordinary care; * * *."

Under the facts of this case, we are unable to say that there was not sufficient testimony to take the case to the jury. See, Danville Cab Co. v. Hendren, 304 Ky. 528, 201 S. W. 2d 561.

Appellee claims for pain and suffering, permanent disability, loss of time, and medical expense. He was first seen by Dr. Green, who prescribed plasters for his back. Dr. Green died shortly after that. Appellee was also examined by Dr. Joseph Riggs, a Chiropractor. He made four X-ray pictures. He states that appellee has a misalignment of the spine which he attributes to the taxicab accident. In his opinion, this condition interferes with appellee in doing work which requires him to lift or stoop. With proper adjustment of the spine, he feels that Smallwood's permanent disability, if any, would be negligible. His charge for X-rays was $20. Dr. L. C. Rudell examined appellee in December, 1947. He found that he "had quite a bit of pain in the back." Outside of that, he "found no signs." He says that appellee's condition would interfere with his stooping or bending; that he would tire. Dr. Charles W. Jefferson, introduced by Royalty, stated that he examined Smallwood on October 22, 1947. He took X-rays which showed a "sort of mild degree" of arthritis. He says

that appellee's symtoms were subjective; that he complains of pain in his back. Dr. J. Duffy Hancock, physician for appellant, testified for appellant. He examined appellee on February 18, 1947. He stated that appellee gave history of having been thrown against the windshield in an automobile accident; he was complaining of pain about his head, but his principal complaint was of pain in his back. He did not see any X-rays of appellee. It was his opinion that appellee had a slight strain of his back as a result of his accident, and that he should return to work within a short time.

Appellee testified that he had worked for the Louisville & Nashville Railroad Company as an oiler for two years; before that he had worked for the Illinois Central Railroad Company from 1941 until 1945; he had worked steadily and had never had any trouble with his back previous to the accident complained of.

Although the medical evidence is conflicting and not very satisfactory, we believe the testimony of appellee, taken with the medical testimony, is sufficient to sustain the verdict of the jury.

The judgment of the circuit court is affirmed.