**Walter SIMONS, Appellant,**

v.

**John ALLEN, Appellee.**

Court of Appeals of Kentucky.

Jan. 31, 1958.

———◆———

W. S. Heidenberg, Raymond F. Bossmeyer, Louisville, for appellant.

Edwin O. Davis, Davis & Mahan, Louisville, for appellee.

STEWART, Judge.

In this action Walter Simons sought in circuit court to recover personal injury and property damages of $15,800 from John Allen, alleged to have resulted from a collision of the automobiles owned and operated by these two persons. The case was submitted to the jury at the conclusion of all the evidence and a verdict was returned for the defendant, Allen.

Simons has appealed from the judgment entered, contending, first, he was entitled to a peremptory instruction and, secondly, the verdict is contrary to law and was the result of passion and prejudice. The points raised present factual problems, rather than legal ones, and this requires that we set forth the pertinent evidence in order to determine whether the verdict is sustained by it.

The accident took place at about 8:45 a.m. on Sunday, October 15, 1955, at the intersection of Clay and Main Streets in Louisville. Main Street, a 60-foot-wide thoroughfare, runs east and west, and is one-way for westbound traffic. Clay Street, which intersects it at right angles, is 36 feet wide and permits travel to flow only in a southward direction. Main Street is divided into four lanes for traffic. Allen, whose wife was with him at the time, was a stranger to Louisville and was unfamiliar with the streets of the city. It was brought out that there was very little traffic on the streets on this occasion.

Allen in attempting to make a left-hand turn off Main Street onto Clay Street was struck by Simons who was traveling westwardly in the same direction. Allen's automobile was in the third driving lane from the south curb and Simons' vehicle was in the second as the two cars drew near Clay Street. Allen testified he signaled a left-turn by hand and also by the turn indicator

on his car as he approached the intersection. He was positive these signals were given at least a city block before he arrived at Clay Street. When he reached the point where he started to turn, according to him, he looked in his rearview mirror, saw the Simons vehicle behind him a distance of 85 to 100 feet, going at a speed estimated by him and two other witnesses at between 50 and 60 miles per hour, and then he applied his brakes and brought his car to a stop. He stated that the momentum of the vehicle caused the left front of it to go from 12 to 18 inches into the adjoining lane to the south.

The right rear bumper and fender of the Simons vehicle and the left front bumper of the Allen car made contact. The Simons car went out of control and skidded sideways for a distance of 102 feet, then the back end jumped the south curb of Main Street west of Clay Street, and the left side of it struck a telephone pole 50 feet west of Clay Street at right angles to the street with sufficient force to render the vehicle worthless. Simons was catapulted from behind the steering wheel of the car, sustaining severe injuries.

Simons testified he was proceeding westwardly on the occasion at a reasonable speed, and this testimony was also corroborated by three eyewitnesses. Further amplifying this statement, he added that, at the rate of speed he was traveling, he could have stopped his car within an approximate distance of 5 to 8 feet. Simons declared he did not see the Allen car "at any time" prior to the moment he made contact with it. Three of Simons' witnesses contradicted Allen's testimony that his car was at a standstill at the time the two cars struck. Police officers who investigated the accident found skid marks extending 10 to 15 feet from the third lane to the point of collision in the second lane. Allen stated his car did not make these impressions on the street, although he admitted one of the officers called them to his attention and he did not deny them.

It is Allen's contention that the position of his car immediately before the wreck left at least 18 feet to the south, or this amount of space in the second lane in which Simons was proceeding, for safe passage of the latter's car. He argues that if Simons had not been speeding and had kept a proper lookout ahead, he could have controlled the progress of his automobile in such a manner that he could have avoided the collision. Simons maintains that, although he may have been guilty of operating his vehicle at an excessive rate of speed, this fact was not the proximate cause of the accident. It is his theory that the Allen automobile swerved so suddenly into the path of his car it was impossible for him to prevent the impact.

KRS 189.340(6) governed Allen's act in turning and it reads:

"Whenever any roadway has been divided into three or more clearly marked lanes for traffic the following additional rules shall apply:

"(a) A vehicle shall be driven as nearly as may be practical entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety; * * *".

The foregoing provision of law imposed a duty upon Allen not to turn from the third lane southwardly until he was certain that such a change of direction could be negotiated free from danger. Simons would have us hold, as a matter of law, that Allen's violation of this subsection was the sole cause of the collision. It is our opinion the controlling facts of this case do not permit us to arrive at this conclusion. Even though it may be conceded Allen failed to comply with the above legal requirement, an important inquiry is whether Simons' own negligence contributed to bring about the mishap. Unquestionably the jury was of the view that Simons failed to use ordinary care in handling his car and, in consequence, his acts had a direct causal connection with the accident.

From the evidence we have recited, it appears it is undenied that Simons failed in his duty to keep a lookout. He virtually admitted as much when he testified: "I did not see him (Allen) at any time." Assuming Simons was not speeding, and he stated he was not, his testimony that he could have stopped his vehicle within 5 to 8 feet, if he had seen Allen's hand or the mechanical signal, creates the belief that his inattention could have been a contributing cause in producing the accident.

We dwell upon these facts to point up the proposition that there was sufficient proof to take the case to the jury and to sustain the verdict they rendered in favor of Allen. In a case of this character, where the evidence is in conflict, we have often said and we repeat here that our duty is not to pass upon the credibility of the witnesses or to determine on which side the preponderance of the evidence lies; rather it is solely to resolve whether there is ample evidence to support the verdict returned by the jury. See Hilsenrad v. Bowling, 292 Ky. 368, 166 S.W.2d 847.

It is our view that the evidence fully upholds the finding of the jury.

In the following cases there were factual situations somewhat analogous to those of the instant case and this Court held in them that a jury should pass on the questions of negligence and contributory negligence: Louisville Taxicab & Transfer Co. v. Smallwood, 311 Ky. 405, 224 S.W.2d 450, 27 A.L.R.2d 158; Columbia Transp. Service, Inc. v. Hawkins, 310 Ky. 244, 220 S.W.2d 561; and Cook v. Gillespie, 259 Ky. 281, 82 S.W.2d 347.

The decision we have reached on the first ground urged for reversal renders unnecessary a discussion of the second ground complained of. Practically the same arguments are advanced to sustain the second alleged errors relied upon by Simons. We therefore hold that the verdict rendered was not contrary to law, and further state there is not even a scintilla of evidence to indicate that the jury acted while under the influence of passion or prejudice.

Wherefore, the judgment is affirmed.