James Earl SOARD, Appellant,

v.

Viola T. ROGERS' ADMINISTRATOR,
C. V. Collins, Appellee.

Court of Appeals of Kentucky.

Jan. 29, 1960.

As Modified March 21, 1960.

Clem F. Kelly, Lexington, for appellant.

Robin Griffin, Miller & Griffin, Lexington, for appellee.

BIRD, Judge.

James Earl Soard was injured while riding as a guest in an automobile when it left the highway and crashed.

· The driver, who was Soard's lady friend and the only other occupant of the automobile, died shortly after the crash in a hospital near·the place of the accident.

Soard sued the driver's estate for damages.

It is substantially stipulated that the driver's negligence was the proximate cause of the wreck without specifying the negligent act or acts. The case was tried on the sole issue of plaintiff's contributory negligence.

■ The defense undertook to establish that the driver was intoxicated to such an extent that she was incapable of properly operating the automobile at the time of the crash; that the crash was the result of her intoxication and Soard either knew or could have known by the exercise of ordinary care that she was so intoxicated. This would, if true, constitute a valid defense and a bar to recovery. Smith's Adm'r v. Smith, Ky., 269 S.W.2d 260. This issue was submitted to the jury on an instruction shown by the record to have been offered by Soard. The jury returned a verdict for the driver's estate. Soard appeals to this Court.

Within a few minutes after the driver's death a state policeman directed a hospital technician to take a sample of her blood for analysis. This was done and the blood was placed in a bottle kept by the policeman especially for that purpose. It was marked for identification and taken to the police laboratory for analysis. Neither the dead driver nor Soard had a representative present during any part of the blood taking process.

The court over the plaintiff's objection permitted the police technician to testify as to the results of the analysis which showed an alcoholic content of .22 per cent by weight. He was likewise permitted to say that this was enough to produce a state of intoxication which was more than sufficient to render her an unsafe driver.

It is apparent from the record that this witness was qualified to make the test and to express an opinion concerning the effect of the alcoholic content on the driver's ability to safely operate her car. However, the testimony is attacked for other reasons.

It is first contended that the taking of blood was a trespass on the driver's dead body. For this reason it is insisted that none of the evidence relative to the blood is admissible.

■ We find it unnecessary to determine whether or not there was a trespass. If there was a trespass the results obtained therefrom were injected into this case by the driver's personal representative who is using it as a weapon of defense for her estate. At least her estate does not complain of the wrong and we know of no other who is privileged to do so.

■ It is contended that the blood test is not conclusive. We agree that it may not be conclusive but it does, if properly conducted, establish the fact of alcoholic content which is pertinent and relevant to the question of intoxication. It is admissible in the same manner as staggering, falling, vomiting and other evidences of intoxication. The weight to be given such evidence is for the jury or trial judge. Kuroske v. Aetna Life Insurance Company, 234 Wis. 394, 291 N.W. 384, 127 A.L.R. 1505; Nordhaus v. Marek, 317 Ill.App. 351, 45 N.E.2d 993; 159 A.L.R. 224; Lawrence v. City of Los Angeles, 53 Cal.App.2d 6, 127 P.2d 931.

In this case however we have more than the blood test. We have evidence that the plaintiff and the driver had been drinking together on the night before, that beer and whiskey were found in the car after the wreck and that the odor of alcohol was in the car and on their clothes.

On the plaintiff's side there is evidence tending to show that both the plaintiff and the driver were duly sober on the night before and about an hour before the wreck and there is negative evidence by a physician that he did not smell alcohol on the driver's breath.

However, the jury was instructed on the point and from the verdict we must conclude that it found the driver to have been intoxicated at the time of the accident. We will not substitute our finding of fact for that of the jury when there is evidence of probative value upon which the jury could base its finding. Simons v. Allen, Ky., 309 S.W.2d 775.

It is further contended that, if the driver was intoxicated as found by the jury, there is not sufficient evidence for the jury to conclude that the plaintiff knew of her condition.

The record discloses that the plaintiff and the driver had been together continuously for approximately three hours immediately before the accident. This evidence is of such probative value that the jury may have reasonably concluded that the plaintiff knew of the driver's intoxication or could have so known by the exercise of ordinary care.

We are also called upon to determine whether the tested blood was sufficiently identified as that of the driver. The testimony concerning the results of the analysis is incompetent unless the identity is established with reasonable certainty. Let us keep in mind that the blood was taken by a technician on the hospital staff in the presence of the state police officers. For the remainder of the legend let us look to the evidence.

Officer Hilton testified as follows:

"Q. 22 I was asking you about the blood sample that was taken from the arm of Viola Rogers. You said you were present when that was done? A. I was.

"Q. 23 Tell what part you took in that? A. We cautioned the technician about taking the sample with a clean needle and new syringe, and I held the bottle or container and put in some powder to keep the blood from coagulating, and the technician took the blood from her arm and put it in the bottle and closed it up.

"Mr. Kelly: You say you put powder in the bottle * * * what kind of powder was that? A. I put it in the bottle, but I am not qualified to explain it. I took the bottle, signed it and gave it to Sgt. Fain.

"Q. 24 Are those bottles or containers furnished by the State Highway Patrol? A. Yes. It was Sgt. Fain's bottle. He brought in the bottle from his car to get the blood sample. That is what they are for, to put blood samples in for blood tests made in the laboratory.

"Q. 12 Did the technician sign his name on that sample of blood that was taken? A. I don't remember if he did or not.

"Q. 21 Did you mark the time that it was taken on the sample of blood you took? A. It was marked by the technician, but I don't remember what was on it now. That has been some time ago.

"Q. 22 Who is that sample given to and who makes the report on it after you send it to the laboratory? A. Dr. Fred Watson would have the report on it."

Officer Fain stated as follows:

"Q. 12 For what purpose is that type of bottle kept? A. For obtaining blood for making alcohol tests.

"Q. 13 After the blood was placed in a container what did Hilton do with it? A. He gave it to me * * * First he put it into an envelope and gave it to me and I put it in a container and kept it in my possession until it was taken to the laboratory.

"Q. 14 What did you do with it? A. I went by the laboratory when I went to Frankfort and Lt. Watson

was there in the laboratory and I turned it over to him.

"Q. 5 Don't you mark on the vial you take the blood in the time it is taken and the date and other information? A. I did not mark this one. Either Hilton or the technician did that. I marked the envelope and the container."

The police technician who made the test testified as follows:

"Q. 11 On April 15, 1956, was there delivered to you a package by Sgt. Fain, who has just testified? A. Yes, I received it.

"Q. 12 Who had marked the package, if you know? A. I don't know who had marked it, but I found certain writing on it.

"Q. 14 When you received this package from Sgt. Fain what did it contain? A. A blood sample for testing.

"Q. 15 When you receive blood test samples do you make a record of those? A. I recorded the information which I found on the envelope containing the bottle with the sample.

"Q. 16 Do you have that in your possession now? A. I have my record of the result of the test.

"Q. 20 Did you receive a sample of blood taken from Viola Rogers on April 15, 1956? A. I received a sample which was identified as being that of Viola Rogers.

"Q. 21 It was marked as that of Viola Rogers? A. Yes.

"Q. 22 Did you run a test on that sample of blood? A. Yes.

"Q. 23 When did you make the test? A. The next morning, which would be, the fourth month, sixteenth day of 1956."

It will be noted of course that neither of the officers testified as to how the bottle of blood, the envelope or the container was marked for identification before delivery to the laboratory technician. Proof of identity could perhaps have been more clearly presented. Nevertheless, we are of the opinion that the evidence points up the sequence of events so clearly that there can be no reasonable doubt that the two police officers and the police technician were testifying about the driver's blood taken immediately after her death in the presence of the policeman and at his direction.

Appellant's complaints on appeal disclose no prejudicial error. The judgment is therefore affirmed.