Edith Grundy WEBB, Administratrix of the Estate of Charles Kennedy, Deceased, Appellant,

v.

Shelby STONE, Administrator of the Estate of John W. Stone, Deceased, Appellee.

Court of Appeals of Kentucky.

Feb. 28, 1969.

As Modified on Denial of Rehearing Oct. 17, 1969.

██

Joe H. Taylor and Henry V. B. Denzer, Hogan, Taylor, Denzer & Bennett, Louisville, for appellant.

Willie C. Fleming, Louisville, for appellee.

CULLEN, Commissioner.

Around 2:15 a. m. on a March morning in 1965 an automobile being driven by Charles Kennedy, with John W. Stone as a passenger, left the highway, struck two trees and a pole, and was demolished. Kennedy and Stone both were killed. Stone's administrator sued Kennedy's administratrix for damages. The evidence for the plaintiff showed that the automobile was being operated at an extremely high speed just before the accident, and it was enough to make out a case of negligence on the part of Kennedy. At the close of the plaintiff's evidence the defendant attempted to introduce testimony as to the results of an analysis showing alcoholic content of blood taken from the bodies of Kennedy and Stone. The purpose was to establish the defense that Kennedy was drunk and Stone must have known it, so as to make Stone contributorily negligent in riding with a drunken driver. The trial court would not permit the testimony to be introduced, whereupon the defendant presented the testimony by way of avowal.

It showed that the alcoholic content of Kennedy's blood was 0.20 percent by weight and that of Stone's was 0.10 percent by weight. The defendant offered no other evidence and the trial court then directed a verdict of liability against the defendant, leaving for the jury's determination only the question of damages. The jury awarded damages of $10,965.60 and judgment was entered accordingly. The defendant has appealed, asserting as her sole ground of error the rejection of the testimony as to the blood analysis.

In Soard v. Rogers' Administrator, Ky., 332 S.W.2d 525, this court held admissible in a civil negligence case the results of an analysis of a blood sample taken from the dead body of an automobile driver, showing high alcoholic content. The only distinctions of any significance that are claimed by the appellee to exist between the Soard case and the instant one are: (1) In *Soard* the blood sample was taken within a few minutes after death, whereas in the instant case the samples were not taken until some two hours after death; (2) in *Soard* the blood was withdrawn from the body by a hospital technician under the direction of a policeman, whereas here the withdrawals were by an undertaker-deputy coroner. It is suggested also by the appellee that in the instant case there was no proof that the instruments used were sterile, and there was some discrepancy in the times of withdrawing the blood as noted on the bottles and on the envelopes, thus indicating the possibility of error.

█ In our opinion the claimed distinctions between this case and *Soard* are not of controlling significance. There is nothing in the realm of common knowledge to indicate or suggest that in a matter of hours after death the alcoholic content of blood that existed at the time of death will change (in particular, increase) so that a test of blood withdrawn two hours after death would not be reliable. We think if such is the fact it is a matter to be brought out on cross-examination or to be established by controverting evidence. Likewise, human experience does not lead to the belief that a licensed undertaker (at least one such as the deputy coroner in this case who testified he had taken blood samples 150 to 200 times) would be likely by inexperience to draw a sample of blood that would show a higher alcoholic content than in fact existed. (In Barton v. Commonwealth, 257 Ky. 23, 77 S.W.2d 397, evidence of an analysis of a blood sample withdrawn by an undertaker was held competent.) If there is some way in which the method of drawing the blood sample can affect the percentage of alcohol to be found in the blood, we think that is a matter to be brought out by the party who is objecting to the evidence. As concerns the purity of the instruments and the accuracy of identifications of the specimens it is our opinion that the foundation laid in a civil case for introduction of evidence of a blood analysis need not preclude every possibility of a doubt as to the identity of the specimen or the possibility of a change of condition of the blood. See 29 Am.Jur.2d, Evidence, sec. 830, p. 922; Bean v. Riddle, Mo., 423 S.W.2d 709.

█ It is our conclusion that the evidence in the instant case embodied a sufficient prima facie showing of reliability to make it admissible, and that the trial court erred in rejecting it.

█ It is true that the defendant herein did not make any avowal as to the significance of an alcoholic content of 0.20 percent (or 0.10 percent) in the blood as relates to a showing of the extent of drunkenness. Apparently the defendant thought that the presumptions prescribed by KRS 189.520, for use in prosecutions for operating a vehicle on a highway while "under the influence of intoxicating liquors," would be applicable. There may be some question about that, and the question of course could be avoided by introducing testimony, as was done in *Soard*, to show what states of intoxication are indicated by the various percentages of alcoholic content. We are concerned on this appeal

only with the question of whether the defendant's failure in the instant case to make an *avowal* as to the significance of the alcoholic contents shown by his other avowal testimony bars him from claiming prejudice from the trial court's refusal to admit the evidence of the alcoholic-content percentages. The question is whether the *relevancy* of the evidence that was offered is sufficiently apparent to this court to warrant a conclusion that the exclusion of the evidence was prejudicial. We think it is. Certainly when the legislature has said, in KRS 189.520, that an alcoholic-content percentage of as much as 0.15 percent creates a presumption that the person is under the influence of intoxicating liquors to such an extent as not to meet the qualifications prescribed by the legislature for drivers, it would be strange indeed for this court to say that a showing of a percentage of 0.20 percent does not indicate to us any relevancy to the question of capacity to drive.

It is our opinion that the evidence offered by the avowal, showing the presence of alcohol in the bodies of both Kennedy and Stone, taken together with the evidence that Kennedy and Stone were together for at least two and one-half hours before the accident and had been seen in the parking lot of a tavern at midnight, that the car immediately before the accident was traveling 65 to 75 miles per hour on a country road, and that it went off the road on the wrong side, was sufficient to warrant an inference that Stone and Kennedy had been drinking together, that the presence of alcohol in Kennedy's body was known to Stone and had so affected Kennedy that Stone should have realized that to ride with Kennedy would create an unreasonable risk of harm to Stone.

The judgment is reversed with directions for further proceedings in conformity with this opinion.

HILL, C. J., and MILLIKEN, STEINFELD and OSBORNE, JJ., concur.

REED, J., dissents.