## BOLEN v. COMMONWEALTH.

Court of Appeals of Kentucky.
Oct. 31, 1952.

Dan T. Martin, Clark Pratt, Hindman, D. G. Boleyn, Hazard, for appellant.

A. E. Funk, Atty. Gen., for appellee.

DUNCAN, Justice.

The appellant, Mart Bolen, was convicted of the offense of voluntary manslaughter in the killing of Herbert Conley. His punishment was fixed at imprisonment for a period of ten years.

For a reversal of the judgment he is relying upon three grounds: (1) that there was no evidence to disprove the interposed plea of self-defense and a verdict of acquittal should have been directed; (2) error in the formation of the jury; (3) failure to admit certain evidence offered by the defendant.

The consideration of the first ground requires a recitation of the testimony. The appellant, a member of the U. S. Army, had returned to his home in Knott County on a 25-day pass. On the afternoon of August 5, 1950, the appellant, the deceased, Herbert Conley, and the latter's brothers, Manis and Curtley Conley, got together and were riding around in a jeep owned by one of the Conleys. It appears that all of the group had been drinking and appellant was intoxicated beyond the point of clear recollection.

They were joined by two young women, Mabrey Gibson and Viola Bolen, and a third man, Arnold Coeburn. During the course of the ride deceased became incensed at appellant's attentions to Mabrey Gibson and a fight ensued in which it appears that deceased was both the aggressor and victor. During the fight appellant broke the windshield of the jeep and was forced to pay deceased $5 which was intended either as a credit upon or full payment for the broken windshield. At some point during their travels the appellant was arrested by a constable and placed in jail at Hindman. After his release and on the next day appellant met deceased. Some argument ensued concerning whether or not appellant had paid in full for the windshield and some threats were made by deceased. After this meeting, and before the fatal encounter, there were other instances in which the appellant was accosted by the deceased and members of his family and threats against appellant were also made on these occasions.

On August 15, 1950, ten days after the initial encounter, appellant, in company with some friends, went to a store and post office near his home. When he reached the store the deceased was sitting on the porch floor with his feet hanging over the edge. Viola Bolen, one of the girls who had been present on the jeep ride, was also at the store.

Appellant immediately broached the subject of the repair bill to the windshield and he asked Viola Bolen about her understanding of the transaction concerning the original payment. She stated that her understanding was that the $5.00 was to be considered as payment in full and an argument ensued between the deceased and Viola. Meanwhile, according to appellant, the deceased started to rise from the porch with a knife in his hand which he had been using either for whittling or cleaning his fingernails. Appellant immediately began shooting and does not know how many shots he fired. However, most of the testimony indicates that there were four shots.

Appellant had purchased the gun on either the evening before or on the morning of the killing and admits that he was carrying it as protection against the deceased or members of his family.

The evidence for the Commonwealth does not appear to contradict the story of appellant in any material respect. However, contradiction of a plea of self-defense may arise from circumstances as well as by direct testimony. Fields v. Commonwealth, 310 Ky. 162, 219 S.W.2d 991.

The appellant, after obtaining the gun, broached the subject of the previous disagreement with deceased. He was some ten or twelve feet from the deceased at the time the shots were fired and he admits that at the time he fired the deceased had not completely gotten to his feet. There is some contradiction concerning the size of the knife which deceased had in his hand. Although appellant describes it as a big knife, the undertaker who removed articles from the clothing of the deceased produced and filed a small pen knife. We think all of the circumstances are such that the court was justified in submitting the case and the jury was justified in returning the verdict which it did.

Appellant's complaint concerning the formation of the jury relates to the fact that after all the regular panel had been exhausted except three members who were absent in attendance at a funeral, the court ordered a special venire of fifty jurors, and drew their names from the wheel. At this time only five members of the jury had been accepted. The sheriff summoned half of this number and twenty two appeared and were examined, at the conclusion of which eleven jurors had been accepted. At this point, the three members of the regular panel who had previously been absent were called and examined. One of the three qualified and appellant exercised his fifteenth challenge in excusing him. The sheriff thereupon summoned more jurors from the list drawn by the court and the selection of the jury was completed.

Appellant contends that the court erred in overruling his motion to set aside the entire jury because of the action of the court in examining the three members of the regular panel after the panel had been declared exhausted and before all of the fifty persons drawn for the special venire were brought into court. It is insisted that the procedure prescribed by KRS 29.280 was violated.

The court was justified in considering the regular panel exhausted although three members were absent when their names were called. However, this did not prevent the absent members being called and examined if they appeared before the jury selection had been completed. The names of such jurors may be called even though they appear after the rest of the regular panel has been exhausted and after bystanders or names drawn from the wheel have been summoned. 50 C.J.S., Juries, § 192(b), p. 925.

[5] Appellant's final contention is that it was error not to permit him to show the mistreatment he had received at the hands of the brothers of deceased on the occasion of the first difficulty. Even if it were assumed that the joint action of deceased and his brothers at the time of the original trouble indicated a conspiracy between them at that time, the conspiracy was not being carried out at the time of the last encounter because none of the brothers were then present. The evidence was clearly incompetent.

Finding no merit in any of appellant's contentions, we conclude that the judgment should be affirmed and it is so ordered.