Roger Dale EPPERSON, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

Benny Lee HODGE, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

Nos. 86–SC–882–MR, 86–SC–900–MR.

Supreme Court of Kentucky.

Nov. 8, 1990.

As Modified on Denial of Rehearing
July 3, 1991.

Kathleen Kallaher, Randall L. Wheeler, Asst. Public Advocates, Frankfort, for appellant Roger Dale Epperson.

Michael A. Wright, Oleh R. Tustaniwsky, Asst. Public Advocates, Frankfort, for appellant Benny Lee Hodge.

Frederic J. Cowan, Atty. Gen., Elizabeth A. Myerscough, Lola Philpot Lewis, Asst. Attys. Gen., Crim. Appellate Div., Frankfort, for appellee.

WINTERSHEIMER, Justice.

These appeals are from judgments based on a jury verdict which convicted Hodge of murder, attempted murder, first degree robbery and first degree burglary for which he was sentenced to a total of 60 years in prison and to death; Epperson was also sentenced to death for murder and sentenced consecutively to twenty year terms of imprisonment for first degree robbery, first degree burglary and attempted murder.

Hodge presents 62 issues on appeal and Epperson presents 69 issues. This opinion will focus on those issues which we believe are most important, although we have considered and rejected all other assignments

of error presented by each of the appellants.

On August 8, 1985, Donald Bartley and Hodge entered the home of the victim and her father posing as F.B.I. agents. Once inside, Hodge produced a gun and tied the father while Bartley took the daughter into a back bedroom and tied her. Both the father and the daughter had their heads covered. Epperson, who had been waiting in an automobile outside the home, was radioed and told to enter. The three men ransacked the house until a safe was found and the father was forced to open it. Almost $2 million in cash, some weapons and jewelry were found by the three men. Hodge is charged with then killing the daughter by stabbing her twelve times in the back with a large kitchen knife, while Epperson and Bartley choked the father into unconsciousness with an electric cord. The three men then left the home. All three were arrested in Florida and returned to Kentucky for trial. Bartley turned prosecution witness and gave a detailed statement identifying both Hodge and Epperson as principals in the crimes.

■ It was not reversible error for the trial judge to admit the statements of the nontestifying codefendant, Hodge.

While in jail in Florida, Hodge confessed his role in the murder and robbery to a fellow inmate, Lawrence Smith. At trial Hodge's confession to Smith was admitted by the redacted testimony of Smith who made reference to the other participants as "they," "he" or "his friend." Epperson sought an admonition to the jury to limit Hodge's confession as evidence only pertaining to the declarant. The motion was overruled without explanation by the trial judge. Bartley, testifying for the prosecution, referred to Epperson as the straw boss or mastermind of the operation. No request for an admonition was made by the defendant.

The failure of the trial judge to admonish the jury to restrict consideration of the nontestifying codefendant Hodge's confession only as to his culpability was harmless error. Considering this voluminous trial record as a whole, the alleged error was nonprejudicial beyond a reasonable doubt. In *Stanford v. Commonwealth*, Ky., 734 S.W.2d 781 (1987), we affirmed a conviction even though a nontestifying codefendant's confession was admitted in error and its impact was cumulative and significant because it did not have the devastating quality as did the other evidence of the defendant's guilt.

While the trial court's failure to give the requested admonition may amount to error under *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), we are pursuaded the harmless error rule should be applied for several reasons. First, Smith's testimony was "sanitized" and at no time did he refer to Epperson by name. Next, the testimony could have as easily referred to Bartley as to Epperson. The third and most compelling reason the evidence was harmless was that Bartley, a participant in the crime, testified fully and his evidence was devastating to Epperson.

■ The closing argument of the prosecution referring to Epperson as the straw boss and mastermind of the operation did not amount to reversible error. Unlike the situation in *Cosby v. Commonwealth*, Ky. 776 S.W.2d 367 (1989), the reference to the codefendant's confession in the closing argument was cumulative and lacked the impact of other evidence implicating the defendant. Cf. *Stanford, supra*. The error was also not compounded by a jury admonition.

■ It was not reversible error or an abuse of discretion for the trial judge to refuse to sever the trials of Epperson and Hodge. The trial judge has broad discretion to determine whether the risk of prejudice requires severance and such a decision will be overturned only upon a clear showing of an abuse of discretion. *Commonwealth v. Rogers*, Ky., 698 S.W.2d 839 (1985); *Wilson v. Commonwealth*, Ky., 695 S.W.2d 854 (1985).

The trial judge found that none of the evidence presented by either appellant was prejudicial to the degree that it would require severance under the standards of *Hoskins v. Commonwealth*, Ky., 374

S.W.2d 839 (1964). There were no antagonistic defenses. Neither defendant took the stand, and trial strategy indicated that counsel for both defendants suggested that Bartley was the actual murderer.

Hodge had a complete opportunity on voir dire to question each of the potential jurors about any prejudice towards Epperson's lawyer, Lester Burns. Eleven of the jurors were questioned and the fact that he did not question all the veniremen is a choice that he made and is not the basis for a claim of reversible error on appeal. Epperson's individual argument also lacks merit. Smith's statements strongly implicated Hodge but made no reference to Epperson. Any prejudice to Epperson was not direct but only through inference. It should not be the basis of reversible error.

Epperson's lawyer, Lester Burns, was indicted by a federal grand jury on multiple counts of mail fraud and conspiracy on March 12, 1986. At an April 1, 1986 pretrial hearing Epperson was informed of the indictments and asked by the trial judge outside the presence of Burns, if he wished to proceed with Burns as his counsel. Epperson chose to keep Burns responding, "I feel he is not guilty so he shouldn't have any bearing on me."

On May 4, 1986, a newspaper article outlined Burns alleged involvement in the laundering of the stolen money from this crime. On three separate occasions, the trial judge considered the effect on the trial of the new allegations against Burns and each time, the conclusion was that the effect was not prejudicial so as to warrant a separation of the trials or a change of venue.

Epperson's claim that Burns had reason not to call certain witnesses who could testify about his own activities as well as incentive to curry favor with the prosecution is without merit. Attorney Burns did attempt to call witnesses but those witnesses invoked their own privilege against self-incrimination.

■ Epperson, in an ineffective assistance claim, is required to satisfy both aspects of the test provided by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) which is that a defendant must prove: 1) that counsel's performance was deficient, and 2) that the deficient performance was prejudicial to a fair trial. Kentucky has adopted the *Strickland* test in *McQueen v. Commonwealth*, Ky., 721 S.W.2d 694 (1986) and limited the exception found in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) to situations of multiple representation. There was no multiple representation in this case and *Cuyler, supra,* does not apply.

■ There was no reversible error in regard to the stipulations made by Epperson's counsel at trial. Among the items stipulated was the purchase of an automobile in Florida which belonged to Epperson. He claims that the title to the automobile and the registration were under the name of McDowell. The record further reveals that it was Epperson who bought the car and then asked McDowell to register the car under McDowell's name. The record indicates that McDowell did not pay for the car and that his signature on the registration document was forged. The facts stipulated were not in dispute. The stipulations merely saved time and did not amount to the functional equivalent of a guilty plea.

■ The denial of the motions for a continuance by both Epperson and Hodge was not reversible error. They cannot claim unfair surprise based on the fact that the testimony of a codefendant had not been anticipated. There was no abuse of discretion by the trial judge in refusing to grant a continuance. *Stump v. Commonwealth*, Ky.App., 747 S.W.2d 607 (1988); RCr 9.02.

■ The prosecution was also correct in its response to the discovery request. Hodge's confession was part of the witness Smith's statement. The prosecution had no written or recorded statements of the codefendants until it received Bartley's recorded statement on May 12, 1986. If the defendants were misled by the prosecution's denial of the possession of any codefendants statements, it was not attributable to any action of the prosecution, and

the discovery response was correct. *Cf. White v. Commonwealth*, Ky., 611 S.W.2d 529 (1980). As a regular witness and not an informant, the defendants were not entitled to Smith's statement until his testimony. RCr 7.26(1). Because his statement was made orally to state police, it was not discoverable pursuant to RCr 7.24(2). Hodge's oral confession to Smith under the 1986 version of RCr 7.24(1) was discoverable upon request by the defendant. Hodge made no such discovery motion and because his confession was oral and not written or recorded, the Commonwealth, pursuant to the 1986 RCr 7.24(2) rule, was not compelled to produce Smith's statement prior to his testimony.

Arguments by the defendants regarding the nondisclosure of Smith's identity are also without merit. The defendants contend that a court order blanketed individual discovery requests to cover all the codefendants and incorporated Bartley's 1985 motion for all exculpatory evidence. The only such ruling in the record was made in the court order on May 6, 1986, and does not address the issue. This order was limited solely to its own elements.

In December, Hodge requested statements of testifying witnesses. These were discoverable under RCr 7.26(1) at the time of the witnesses' in-court testimony. His request for exculpatory statements was moot on May 23, 1986, because both defendants received information of Smith's statements that day and five days later received Bartley's. Epperson's January request for written or recorded statements or confessions of defendants was ineffective because none existed until Bartley's May confession. Pursuant to RCr 7.24(2), his additional request for written or oral statements made to the police which implicated him were nondiscoverable.

This record does not indicate that the prosecution acted in bad faith or that the trial judge abused his discretion in denying continuances because the defense received both Smith's and Bartley's statements, the impeaching evidence for the prosecution, the conviction records, pending charges and any promises of leniency. Hodge's

request for a continuance is perhaps at variance with his motion to dismiss for lack of speedy trial on the date trial began. The Commonwealth did not violate any court order of discovery.

■ The failure to disclose the identity of Smith did not result in any prejudicial or reversible error. The appellants' analysis of an informer is not applicable to Smith, and, consequently, the prosecution here was not required to reveal his identity pursuant to RCr 7.24 and *Commonwealth v. Barber*, Ky.App., 643 S.W.2d 592 (1982). An informer is one who furnishes law enforcement officials with information of legal violations; under such a definition, Smith was not an informant. *Burks v. Commonwealth*, Ky., 471 S.W.2d 298 (1971); *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

The allegation that the trial judge erred in failing to hold a pretrial in camera hearing regarding the withholding of Smith's identity is meritless because the defense made no request for such a hearing. Smith's identity as a material witness and his address were revealed to the defense in the May 20 court order.

The nondisclosure of Smith's identity was not error and the appellants' right to exculpatory evidence by impeaching Smith was not compromised because the Commonwealth did not wrongfully withhold any evidence favorable to the defense. This situation is different from *Rolli v. Commonwealth*, Ky.App., 678 S.W.2d 800 (1984) where the prosecution knowingly withheld information. Here the trial judge never ordered such production and the prosecution followed proper discovery procedures.

■ There was no error in the behavior of the Commonwealth in regard to the claim of concealing certain exculpatory evidence, including Smith's statement. The prosecution is under a duty to produce exculpatory evidence in time for due investigation. *Silverburg v. Commonwealth*, Ky., 587 S.W.2d 241 (1979). In determining whether the delay in disclosure of Smith's statement was error, this Court must look to see if the prosecution was given a more

favorable opportunity to convict. The record indicates that the Commonwealth was not aided by the delay and that the prosecution was justified in stating that it could not guarantee the safety of Smith who was still under the control of a foreign jurisdiction. This case is clearly distinguishable from *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) because there was no recommendation for leniency made on behalf of the witness.

Smith's statement actually implicated Epperson as to the crime and was only exculpatory as to punishment labeling Hodge and not Epperson as the actual killer. Any exculpatory value to Epperson was realized because Epperson received the statement several days before trial and there was sufficient time to prepare a defense before Smith testified.

In addition, on May 20, 1986, the Commonwealth filed a certificate of materiality of a witness who was confined in a penal institution identified as Smith and who was lodged in Florida's Orange County jail. The certificate should have given notice to Epperson but he did not seek a continuance until the beginning of the trial. Both Epperson and Hodge had from May 28 to June 16 to prepare for Smith's testimony and both defense lawyers effectively cross-examined Smith on the witness stand.

■ The defendants were not denied the effective assistance of counsel because of the lack of private consultation.

The trial judge responded in a reasonable fashion to defense requests, having the defendants moved to closer security facilities, keeping in mind the adequacy of the county jail and convenience for defense counsel. This only became an issue following discovery of the escape preparations by the defendants.

The record indicates that there was an exaggeration of the conditions at the Pikeville jail. Moreover, each time the defendants complained to the trial judge there was action taken immediately to correct the situation.

There was no unaddressed extraneous conditions which interfered with the opportunity of counsel to privately communicate with their clients. There was no deficiency that can be attributed to having resulted in compromising the right of either appellant to effective counsel. *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

■ There was no abuse of discretion on the part of the trial judge for failing to grant a new trial because of newly discovered evidence in the form of affidavits from prison inmates indicating Bartley admitted killing the daughter.

In determining whether the new evidence is of such a nature as to require a new trial, the trial judge is vested with broad discretion. *Gibbs v. Commonwealth,* Ky. App., 723 S.W.2d 871 (1987). Here the trial judge fully considered the prisoner's affidavits at the hearing for a new trial. His conclusions were that the affidavits were not sufficient and did not present credible evidence so as to disturb the jury findings. There is nothing in our careful review of the record which would even suggest that this conclusion was an abuse of discretion.

■ The admission of evidence of other crimes and bad acts did not deny either appellant a fair trial and did not constitute reversible error.

Most of the testimony cited by the appellants were single responses during the course of demonstrating the totality of events surrounding the crimes. The only exception is Bartley's testimony that Epperson said, "It's your time. I got the last one. You've got to kill the doctor." This testimony was repeated three times thus magnifying any prejudicial effect. However, the record reveals that this may have been a situation that the appellants themselves created.

The first time Bartley made this statement was on direct examination; it came in the midst of a long narrative testimony and the appellants did not object. The second time Bartley made the statement was the next day during cross examination. The question which produced his response was,

"Tell me again exactly what happened. Tell me what you said yesterday." Bartley repeated what he had said and then appellants objected. The trial judge sustained the objection and admonished the jury not to consider the answer to the last question. Bartley was also told not to mention any other crime.

Appellants then immediately questioned Bartley about the Epperson statement and asked again what happened at this point. Bartley again responded with the Epperson statement. Appellants objected and finally Bartley was brought into chambers and told exactly what he could not say.

A careful analysis of this sequence of testimony indicates that during cross examination, Bartley was directly led into repeating the Epperson statement to which the appellants failed to initially object. They cannot now claim reversible error because of these statements. Such a situation would allow the appellants to create error.

■ There was also no abuse of discretion on the part of the trial judge in determining whether the probative value of evidence of other crimes outweighed its possible prejudicial effect. *Rake v. Commonwealth*, Ky., 450 S.W.2d 527 (1970). Evidence otherwise admissible is not rendered inadmissible merely because it shows unrelated criminal acts. *Jones v. Commonwealth*, Ky., 554 S.W.2d 363 (1977). Here the evidence was admitted to show identity. *Cf. Pendleton v. Commonwealth*, Ky., 685 S.W.2d 549 (1985). In addition, the trial judge gave a specific curative limiting admonition. The defendant was not unduly prejudiced. *Wonn v. Commonwealth*, Ky. App., 606 S.W.2d 169 (1980).

■ The trial judge did not abuse his discretion when he denied a mistrial following a motion by the defendants alleging that the jurors improperly met with the trial judge. About one and a half weeks after the trial began, the jury requested a meeting with the trial judge. Both defense counsel were fully aware of the request and neither objected. The meeting was recorded and the jurors expressed their concern about the absence of a law enforcement officer in the court room, television cameras hovering over their shoulders and accommodations for the upcoming weekend. There is no basis for the claim of error.

The admonition of the trial judge cured any possible prejudice and there was no abuse of discretion. *Cf. Kinser v. Commonwealth*, Ky. 741 S.W.2d 648 (1987).

■ The allegations that the appellants were denied due process of law because of an alleged conflict of interest by the prosecutor are totally without merit.

The final judgment of conviction was rendered on June 20, 1986, and on August 8 of the same year, the surviving victim filed a civil lawsuit against Epperson and Hodge for damages. The counsel in the matter was, in addition to being a private attorney, an assistant Commonwealth attorney in the criminal prosecution. The trial judge overruled the motion for a new trial on August 19, 1986.

The representation of the surviving victim in a civil matter was completely after trial. There is no evidence to the contrary. The appearance of alleged impropriety without any impact on the trial does not create a sufficient prejudice for a reversal. The prosecutor's conduct may be inappropriate, but it does not amount to reversible error unless the behavior undermines the fundamental fairness of the trial. *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). *Jordan v. Commonwealth*, Ky., 371 S.W.2d 632 (1963).

Allegations of the appearance of impropriety had no impact on the criminal trial.

■ The restricted cross-examination of Bartley did not deny the appellants their right to confrontation. The scope and extent of cross-examination for motive is within the sound discretion of the trial judge. *Barrett v. Commonwealth*, Ky., 608 S.W.2d 374 (1980). The restrictions placed on the cross-examination by the trial judge were minimal. The jury had ample opportunity to determine the veracity and demeanor of Bartley. The right to confrontation guarantees an opportunity for

effective cross-examination but not cross-examination in whatever way and to whatever extent the defense might wish. *Delaware v. Fensterer,* 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985).

Bartley was cross-examined with over 500 questions during two days of trial. The jury was made aware of his involvement in the crimes and the fact that he was facing charges for that involvement and that he was informed before testifying that the death penalty would not be sought against him. The trial judge ruled that this was adequate cross-examination and it was within his sound discretion to so rule.

■ The photos of the victim were not unduly gruesome and repetitive so as to amount to reversible error. Our review of the photos indicate that they were not unduly gruesome because the crime itself was brutal and gruesome and therefore so are the photographs. The state cannot be precluded from proving the commission of a crime that is by its nature heinous and repulsive. *Salisbury v. Commonwealth,* Ky., 417 S.W.2d 244 (1967). Gruesome photos alone cannot be the basis for exclusion.

The appellants were not denied a fair trial or sentencing because the jury was not unduly prejudiced by the pictures. The photos were relevant to show the crime scene; they were necessary for the prosecution to carry its heavy burden of proving every element of the events beyond a reasonable doubt. *Gall v. Commonwealth,* Ky., 607 S.W.2d 97 (1980).

■ The conduct of the prosecutor during closing argument did not amount to reversible error. The statements made by the prosecutor in closing argument were not so egregious so as to warrant reversal considering the totality of the circumstances in this case. *Cf. Summitt v. Bordenkircher,* 608 F.2d 247 (6th Cir.1979). The prosecution is given reasonably wide latitude in argument to persuade the jurors. *Lynem v. Commonwealth,* Ky., 565 S.W.2d 141 (1978). The brutality of the murder and the amount of evidence make it unlikely that the prosecutorial comments would have affected the outcome of this

case. The record clearly indicates that the prosecutor did not trivialize in any way the role of the jury but rather appealed to the jury to make a decision on the penalty. He told the jury, "You must find that the only appropriate penalty is death."

■ The victim impact evidence presented by the prosecution was relevant and not prejudicial. It is important to note that no objection was made to either the life photograph or the testimony of the surviving father. The production of a photograph of the deceased girl and the surviving victim's testimony in reference to the photograph were relevant to the circumstances surrounding the crime and not unduly inflammatory. *Cf. Ice v. Commonwealth,* Ky., 667 S.W.2d 671 (1984). In addition, the statement by Bartley describing the girl's concern for her father was relevant evidence. The trial judge did not err in allowing the prosecution to depict the victim as a living person. *McQueen v. Commonwealth,* Ky., 669 S.W.2d 519 (1984).

■ The trial judge did not abuse his discretion in denying a motion by Hodge for a change of venue. Lengthy discussions were conducted between the trial judge and the defense counsel concerning the request for a change of venue. An evidentiary hearing was requested by defendant Bartley but was never held because Bartley evidently abandoned the request when he decided to cooperate with the prosecution. Neither Hodge nor Epperson pursued an evidentiary hearing.

■ The victims were prominent members of the community in the county in which the case was tried. Coverage of the case appeared with frequency in the local and state-wide newspapers, and most of the jurors admitted having read or heard about the case. It is not the amount of publicity which determines whether venue should be changed, but whether public opinion is so aroused as to preclude a fair trial. *Kordenbrock v. Commonwealth,* Ky., 700 S.W.2d 384 (1985). The appellants refused the trial court's suggestion of a Pike county jury and the trial judge ordered individu-

al voir dire on the issue of pretrial publicity. Extensive voir dire was conducted and a jury was impaneled with very little difficulty. This shows that the trial judge considered every issue very carefully and did not abuse his discretion.

In order to obtain a change of venue, the defendant must demonstrate actual prejudice except in extreme circumstances. *Cf. Coleman v. Kemp*, 778 F.2d 1487 (11th Cir.1985). That is not the case here. We are satisfied that those who were permitted to sit were not prejudiced against Hodge. *Britt v. Commonwealth*, Ky., 512 S.W.2d 496 (1974); *Brewster v. Commonwealth*, Ky., 568 S.W.2d 232 (1978). When an individual who has heard about the case has been subjected to extensive voir dire examination, there is no abuse of discretion when they are seated and profess an oath as to their ability to try the issue solely on the law and evidence produced in court. *Smith v. Commonwealth*, Ky., 473 S.W.2d 829 (1971). *Cf. Gall, supra.*

 We do not believe that the jurors in question were so predisposed to the death penalty that they could not consider all possibilities. Hodge was not denied his right to a fair trial by an unbiased and impartial jury. All of the jurors of which Hodge now complains indicated that they could fully consider all the possible penalties. Both prosecution and defense are entitled to jurors who will fully consider the full range of penalties. *Morris v. Commonwealth*, Ky., 766 S.W.2d 58 (1989). Here all the jurors who were seated were questioned concerning the range of penalties and all answered affirmatively that they would consider the four possible penalties.

 Hodge should not have introduced the subject of parole and the prosecution's objection to such mention was properly sustained. The complaints regarding the jurors who expressed concern over the parole system were merely speculative and do not indicate any prejudice or bias. There was no abuse of discretion and no prejudice.

 Hodge did not have ineffective assistance of counsel merely because of his attorney's dual representation. Hodge's attorney was also counsel for Lester Burns on his federal indictments. Hodge has merely made an allegation without demonstrating any impact on his trial. Dual representation might be improper but Hodge must show why such representation made his counsel's performance deficient. He did not. Hodge has failed to show how his counsel's representation created a conflict of interest either actual or potential that affected the adequacy of his representation. *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). The burden of establishing actual conflict is on Hodge. *United States v. Knight*, 680 F.2d 470 (6th Cir.1982) (cert. den.) 459 U.S. 1102, 103 S.Ct. 723, 74 L.Ed.2d 950 (1983). Joint representation of multiple defendants by the same counsel does not automatically constitute a violation of the constitutional guarantee of effective assistance of counsel even in a death penalty case. *White v. Commonwealth*, Ky., 671 S.W.2d 241 (1983).

It was not reversible error for the trial judge to deny Hodge's request for a continuance based on an allegation of a prosecutorial violation of the discovery order due to the prosecution's failure to provide exculpatory evidence relating to a "no prosecution hearing" in Florida. The record indicates that the Commonwealth had no knowledge of the hearing and merely notified Florida authorities of witness Smith's cooperation. There is no evidence in the record beyond Hodge's allegation that a "no prosecution hearing" was ever scheduled or held. Defense counsel effectively cross-examined Smith on the question of leniency. Smith was not denied his right of confrontation. The prosecution did not withhold evidence of leniency in violation of the defendant's right to a fair trial as stated in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The prosecutor was in compliance with the discovery order pursuant to RCr 7.26(2). There was no *Brady v. Maryland, supra,* violation. Hodge was not prejudiced.

 Hodge's allegation, that the failure of the trial judge to consider mitigating

evidence in sentencing Hodge to death is a constitutional error, is without merit. K.R.S. 532.025(1)(B) and (2) does not require the trial judge to consider mitigating evidence before imposing final sentence. The trial judge fully complied with his statutory requirement when he instructed the jury before they began their penalty phase deliberation. Subsection 1B of the statute directs that upon the findings of the jury the judge shall fix a sentence within the limits prescribed by law. The trial judge is not directed to hear any evidence in mitigation after the jury makes its findings. This was a jury trial, and Hodge's allegations against the trial judge are misplaced. *Cf. White, supra.*

In any event Hodge was afforded consideration of each statutory and proffered nonstatutory mitigating factor and his argument of preclusion is without merit. The jury received guidance as to all the main circumstances of mitigation in the instruction.

██ Pursuant to K.R.S. 532.075, we have made a careful review of the record and we have determined that the death sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor. The death sentence was not excessive or disproportionate to the penalty imposed in similar sentences since 1970 considering both the crime and the defendant. Those cases have been previously recited by this Court most recently in *Simmons v. Commonwealth,* Ky., 746 S.W.2d 393 (1988), and that list is incorporated herein by reference and our review in this case is in accordance with K.R.S. 532.-075(5). In addition, we have also considered the case of *Moore v. Commonwealth,* 771 S.W.2d 34 (1989). We have conducted an independent review of all the circumstances and conclude that they exceed any minimum justifying capital punishment.

The judgment of conviction is affirmed.

All concur.