Larry COPLEY, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 91–SC–850–MR.

Supreme Court of Kentucky.

March 18, 1993.

Rehearing Denied July 1, 1993.

Joel R. Smith, Wilson, Smith & Hoover Law Offices, Jamestown, for appellant.

Chris Gorman, Atty. Gen., Vickie L. Wise, Asst. Atty. Gen., Frankfort, for appellee.

WINTERSHEIMER, Justice.

This appeal is from a judgment based on a jury verdict which convicted Copley of first-degree manslaughter and sentenced him to twenty years in prison.

The issues presented are whether the jury panel and jury selection process was proper; whether the admission into evidence of testimony of various witnesses and exhibits including photographs was proper; whether it was error to preclude the defendant from impeaching the testimony of a Commonwealth witness; whether the admission of rebuttal testimony was reversible error; whether there was prosecutorial misconduct and whether it was error to overrule a motion for a new trial.

Copley was charged with the shooting death of his ex-girlfriend's current boyfriend in a shopping center parking lot. He relied on the defense of self-protection. Testimony at trial from various witnesses indicated that both Copley and the victim had guns pointed at each other in the parking lot. Just prior to the shooting Copley handed his weapon back to his nephew and the victim got into his car and was seated in the driver's seat. Copley got the weapon back and shot the victim twice behind the left ear at close range. Several witnesses testified that Copley stated immedi-

ately prior to the shooting "He's done pulled a gun on me. If I kill him now it's self defense." Upon conviction, this appeal followed.

There was no reversible error in the trial judge's actions concerning the initial selection of the jury panel or the jurors subsequently accepted or rejected. There is no requirement that the initial panel must be first exhausted. Jury selection was conducted in accordance with K.R.S. 29A.060(10) and RCr 9.30(2) and the directions of *Asher v. Commonwealth*, Ky. App., 614 S.W.2d 249 (1980). Copley's contention that it is improper to merge a new venire with an existing panel is without merit.

The argument that the excusal of the elementary school principal prior to *voir dire* was improper is without merit. Copley has not made the basis of his claim for error a part of the record in this case. A claim which is unsupported by the record cannot be considered on appellate review. *Ford v. Commonwealth*, Ky., 472 S.W.2d 261 (1971). This Court will not search the record in order to find error which counsel has failed to present. *Young v. Newsome*, Ky., 462 S.W.2d 908 (1971).

The trial judge did not commit reversible error by excusing another juror who was principal at the Jamestown Elementary School. The trial judge did not abuse his discretion under the circumstances. K.R.S. 29A.100.

Copley also objected to employees of Union Underwear being present on the jury panel. He argues that prejudice occurred as a result thereof because both the victim and his girlfriend were employed at the underwear plant. Such an association of itself is insufficient to excuse a juror. There was testimony that between three and four thousand persons are employed at the plant. Copley has failed to demonstrate that the refusal to discharge the fellow employees amounted to reversible error. *Polk v. Commonwealth*, Ky.App., 574 S.W.2d 335 (1978).

A careful examination of the record indicates that the trial judge did not err when he overruled the objections of the defense to the admission of photographs, dismissal of the indictment and the motion to dismiss. In addition, the testimony of Nancy Roy, Brenda Fox and Officer Barrett was admissible. Copley did not suffer undue prejudice as a result of the exclusion of part of his taped statement.

In regard to the photographs, Copley objected to their introduction claiming that a proper foundation had not been laid. On appeal, he also argues that the introduction of the photos was solely for the purpose of inflaming the jury.

The prosecution presented sufficient evidence to show that the photos were taken at the scene and there was no tampering by police. The limited check by emergency medical technicians to determine the condition of the victim's vital organs does not support Copley's theory of tampering. The claim that the photos should have been inadmissible because they were gruesome is without merit. Gruesomeness alone cannot be the basis for exclusion of photos. *Epperson v. Commonwealth*, Ky., 809 S.W.2d 835 (1991). The photos showed the position of the body in the automobile and the position of the gun barrel resting down between the bucket seats which discredited Copley's claim of self-defense. This is not a situation such as existed in *Holland v. Commonwealth*, Ky., 703 S.W.2d 876 (1986). The claim that the photographs were taken somewhere other than the crime scene was without foundation.

Copley argues that the testimony of the coroner and of one of the investigating officers was suspect because they prepared notes and reports of their findings and these notes and pictures were not provided during discovery. In both instances the prosecution was unaware that such materials existed, and Copley's counsel was afforded an opportunity to review the photographs and the reports prior to the testimony. Copley has failed to demonstrate that he suffered any prejudice as a result of the documents. The coroner did not introduce any photographs at trial and the officer did

not rely on the so-called daily log notes. Any possible error was totally nonprejudicial. RCr 9.24.

It was not reversible error for the trial judge to refuse to dismiss the indictment because the prosecution had failed to provide notice of test results performed on the weapon found in the victim's car. Copley's motion for discovery included a request for any scientific tests performed in the case. During the testimony of Detective Bailey, Copley objected when the prosecution asked whether a fingerprint analysis of the victim's weapon had been conducted. The officer responded affirmatively. A hearing was held outside the presence of the jury to review the police report. The officer had dusted for fingerprints but found none. He had omitted that information from his report. The officer stated that he advised defense counsel that no prints had been found on the weapon. A lab test was not performed under the circumstances. The trial judge prohibited the introduction of the test results and denied the motion to dismiss. Copley did not request an admonition. The trial judge's ruling was correct. Since test results were not reduced to writing, it is not error that the prosecution failed to provide such evidence. *Cf. Kendricks v. Commonwealth*, Ky., 557 S.W.2d 417 (1977). Any error was harmless.

▇ Copley also argues that reversible error occurred when the prosecution was allowed to admit portions of an audio tape of his statement. He claims that the exclusion prevented him from proving his defense that the victim was the aggressor. The trial judge permitted the prosecution to excise portions regarding a conversation for an alleged contract for death on the basis of hearsay. The Commonwealth concedes the portion of Copley's statement concerning threats and solicitations made by the victim and Donna Janes should not have been excised from Copley's taped statement. However, the error did not unduly prejudice the defendant and was harmless. RCr 9.24.

Immediately following the denial of the defense request, counsel informed the trial judge of his intention to call a witness,

Phillip Sears, regarding the victim's and his girlfriend's attempted acts of solicitation for the murder of Copley. Sears' testimony that the victim and Donna Janes approached him on three separate occasions to solicit the defendant's murder was far more detailed than what Copley explained in his taped statement. In addition, four other witnesses also submitted testimony to that effect. The defense urged by Copley was adequately presented to the jury. The refusal of the trial judge to permit the jury to hear the taped statement in its entirety was harmless beyond a reasonable doubt. RCr 9.24.

Copley also contends that the prosecution made improper comments which implied the defense witness Sears and Copley had been involved in illegal marijuana transactions. He claims that the implications of "business dealings" were advanced through the testimony of the victim's girlfriend.

It was defense counsel who first made the jury aware of witness Sears' financial problems and the fact that the girlfriend knew that he had no money. Defense counsel also asked Sears what kind of business dealings he had with Copley. The Commonwealth maintains that the reason for asking the question was to discover bias on the part of the witness. The trial court sustained defense counsel objections and gave an admonition to the jury. There was no error. *Hardy v. Commonwealth*, Ky., 719 S.W.2d 727 (1986).

▇ It was not error for the trial judge to admit the testimony of a witness during rebuttal in response to the defense claims of threat. The testimony was relevant to the issue of who was the aggressor. There was no error.

Copley was not denied the opportunity to impeach three witnesses who testified on behalf of the prosecution. Copley cross-examined the girlfriend in detail and had considerable opportunity to impeach the witness. Copley had ample occasion to impeach witness Smith regarding bias and inconsistent statements. Although unsuccessfully attempting to impeach Smith for bias, Copley was allowed to submit testimo-

ny by avowal. The use of a taped statement was not reversible error. There is no authority which prohibits the introduction of a tape-recorded statement as an additional avenue of impeachment.

■ Copley argues that evidence was improperly submitted by the Commonwealth on rebuttal. Specifically, he now challenges the testimony of Detective Bailey regarding a weapon that may have been seen on the victim's person and incidents involving the victim and his ex-girlfriend prior to the shooting. Copley's primary argument centers on the Commonwealth presenting proof of an incident of Copley's shooting through a window of a car in which Copley's ex-girlfriend and son were passengers.

During Copley's case-in-chief, he went into great detail to explain previous incidents and how they affected his state of mind at the time of the shooting on June 12, 1990. Copley introduced threats made by the victim and his ex-girlfriend to kill him. Copley also focused on how his love and concern for his son motivated his going to the parking lot that night. Copley specifically denied the earlier shooting incident on cross-examination.

Copley opened the door to these collateral issues and rebuttal was permissible. *Taylor v. Commonwealth*, Ky., 449 S.W.2d 208 (1970). There was no clear showing of arbitrariness, nor an abuse of discretion on the part of the trial judge, and consequently, the ruling of the trial judge will not be disturbed on appeal. *Davis v. Commonwealth*, Ky., 795 S.W.2d 942 (1990).

In regard to the earlier shooting incident, the testimony of Deputy Gadberry was not so damaging as to require reversal. His correction by affidavit attached to the Motion for a New Trial of the exact status of the broken auto glass did not compel a new trial. The trial judge did not abuse his discretion in denying the motion. There was no reversible error.

The statements made by the prosecution did not require a dismissal of the indictment by the trial judge. In each instance complained of, Copley objected to the remarks. The trial judge sustained all but one objection and admonished the jury. No further action was requested and no further action was needed. Copley's reliance on *Sanborn v. Commonwealth*, Ky., 754 S.W.2d 534 (1988) is misplaced because the actions here did not rise to the extreme level denounced in *Sanborn, supra. Cf. Niemeyer v. Commonwealth*, Ky., 533 S.W.2d 218 (1976).

It was not reversible error for the trial judge to overrule the motion for a new trial. There was no abuse of discretion. *Epperson v. Commonwealth*, Ky., 809 S.W.2d 835 at 841 (1991).

Finally, Copley is not entitled to a reversal because of any alleged cumulative errors. Although some might choose to focus on potential technical violations, it is clear from a careful review of the evidence that Copley did indeed shoot and kill the victim and was not acting in self-defense. He received a fundamentally fair trial. *Moore v. Commonwealth*, Ky., 771 S.W.2d 34 (1989).

The judgment of conviction is affirmed.

STEPHENS, C.J., and REYNOLDS and SPAIN, JJ., concur.

LEIBSON and LAMBERT, JJ., file separate dissenting opinions.

COMBS, J., joins in LEIBSON's dissent and LAMBERT, J., joins LEIBSON's dissent as to Point I.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

The Majority Opinion is woefully short on the critical facts and precise legal issues involved. Thus, with apologies to the reader, this Dissent is extended by material which should be in the Majority Opinion.

## I. REVERSIBLE ERROR IN ADMITTING EVIDENCE OF AN ALLEGED PREVIOUS UNCHARGED CRIMINAL ACT, AND DENYING APPROPRIATE REBUTTAL

When the appellant took the stand in his own defense, a part of his testimony was that he was a loving and concerned father,

and he had gone to the shopping center parking lot, the scene of the shooting, on the night in question because he was told that his son was running loose unprotected in the parking lot, after he had been unable to rouse the authorities to deal with the situation.

On the pretext of rebutting this testimony, the Commonwealth recalled Donna Janes, the appellant's former paramour who was now living with Joe Biggerstaff, the decedent, when this homicide occurred. Donna Janes testified to an incident occurring eight months before, which if true, represented collateral criminal activity of a serious and offensive nature, highly prejudicial to the character of the accused.

Appellant had lived with Donna Janes for approximately seven years, and the child born of this relationship had been the subject of a custody and visitation battle following their separation. Donna's so-called rebuttal testimony described an altercation some eight months before, wherein the appellant allegedly shot through the window of a car she occupied with their child. As independent corroboration of Donna Janes' story the Commonwealth then called Officer Jay Gadberry, who had gone to the scene of the prior altercation, and who testified that there was a bullet hole in the driver's side window just as Donna Janes had testified.

None of this testimony reflected animosity or motive to shoot Joe Biggerstaff, except perhaps by piling inference on inference, or through remote and insubstantial inference, nor does the single transgression, even if true, directly refute the appellant's testimony that he was a loving and concerned father. Its admission fits none of the exceptions to the rule against proof regarding incidents of prior, uncharged, specific acts of criminal misconduct. As we stated in *Drumm v. Commonwealth,* Ky., 783 S.W.2d 380 (1990):

> "The 'General Rule' is '[e]vidence of the commission of crimes other than the one that is the subject of a charge is not admissible to prove that an accused is a person of criminal disposition.' [Citation omitted.] Before admitting such evidence the burden is on the Commonwealth to establish a reason to apply some well-defined exception." *Id.* at 381.

Further, even where "evidence is debatably or remotely relevant," it is "not" admissible unless "the *probative* value of the evidence outweighs its *inflammatory* nature." *Commonwealth v. Morrison,* Ky., 661 S.W.2d 471, 473 (1983). [Emphasis original.]

The appellant denied this evidence regarding a prior shooting incident was true. It is highly significant that in a post-trial affidavit Officer Gadberry, who had confirmed the truth of Donna Janes' claim, recanted a significant part of his testimony. His affidavit stated that, upon reflection, he remembered there was no bullet hole through the driver's side window of the car as Donna Janes had testified. To the contrary, the window had been knocked out and was in pieces across the interior of the car, from causes unknown. Officer Gadberry's new version was consistent with testimony which would have been forthcoming from the appellant's brother, who owned the car and who was denied the right to testify to disprove Donna Janes' version of the prior incident. The brother had been present in court when Donna Janes and Officer Gadberry, testified and the trial court held he was precluded by the so-called separation of witnesses rule, Civil Rule 43.09, from giving surrebuttal testimony.

The testimony of this witness, and another witness who swore that she heard Donna Janes admit that in her anger she made up this story about shooting into her car, was offered in surrebuttal, and the separation of witnesses rule was erroneously applied. The separation of witnesses rule is not inflexible, and the interest of justice requires the court to waive an innocent violation in order to permit a party to confront new evidence presented after he has completed his case in chief, evidence which he could not have reasonably anticipated at the time when he allowed witnesses, members of his family, to remain in the courtroom. Under Civil Rule 43.09, the judge has both the duty and the discretion to

waive the application of the rule where the circumstances so indicate, and this was obviously such a case.

"As the cases in the annotations demonstrate, trial courts have very properly been given wide latitude in exercising their discretion in applying this Rule. This is in accord with the policy of the Civil Rules to ignore harmless error and not to permit technical violations to impede the achievement of substantial justice." Bertelsman & Philipps, *Kentucky Practice*, 4th Ed. Civil Rule 43.09.

Where to apply the rule would defeat good trial practice and ultimate ascertainment of the truth, a technical violation such as occurred here should be waived. *See Sanders v. Drane*, Ky., 432 S.W.2d 54 (1968). In *Moore v. Commonwealth*, Ky., 323 S.W.2d 577 (1959), another murder case presenting similar problems to this one, we held that the trial court applied the separation of witnesses rule in an abusive manner, and the same is true in this case.

Finally, the trial court should have granted a new trial based on Officer Gadberry's post-trial affidavit. It significantly affected the credibility of critical evidence in this case. The Commonwealth in closing argument placed great emphasis on the importance of the evidence from Jay Gadberry, as an impartial witness and a Deputy Sheriff of Russell County at the time of his investigation of this prior incident. He emphasized the fact that Gadberry saw the bullet hole in that window, when such was not the case. RCr 10.02 provides for a new trial of a criminal case "for any cause which prevented the defendant from having a fair trial, or if required in the interest of justice." It was an abuse of discretion to deny a new trial in the circumstances of this case.

Our Court has erroneously affirmed a situation where highly inflammatory evidence, either totally irrelevant or, at best, remotely relevant, was admitted over the vehement objection of the accused, where this was compounded by erroneously excluding evidence offered to contradict such evidence, and where this was further compounded by failing to grant a new trial when, by post-trial affidavit, a critical part of this prejudicial evidence was recanted.

## II. PORTIONS OF THE APPELLANT'S RECORDED STATEMENT TO THE POLICE ERRONEOUSLY EXCLUDED

Over objection of defense counsel, the court allowed the Commonwealth to play a portion of an audio-taped statement to the police given by the appellant on the night of the occurrence with *important portions excised* in which the appellant told the officers about the decedent's previous solicitations of other persons to murder the appellant. At page fifteen of the Commonwealth's Brief the *Commonwealth concedes* that it was error to exclude this evidence. The *Commonwealth quotes* from Lawson, *Kentucky Evidence Law Handbook* (2d ed. 1984), § 8.00, Subpart D, wherein Lawson explains why evidence of this nature is admissible. The Brief states:

"[T]he Commonwealth believes the portion of appellant's statement concerning threats and solicitations made by victim and Donna Janes should not have been excised from appellant's taped statement."

The Commonwealth then argues harmless error.

How harmless? A significant portion of the Commonwealth's case was given over to showing that the appellant did not believe he was in danger from Joe Biggerstaff on the night this incident occurred, and to proving that the appellant concocted this story about the solicitation of his murder together with friends and family after the shooting occurred. Yes, these witnesses testified as to the same evidence that was excised from the tape, but the playing of the entire tape as given to the police officers only a few hours after the shooting incident and while in custody, would have served to prove appellant's claims were not concocted later but were very much upon his mind at the time of the shooting incident. Further, the tape in its entirety would have materially changed the jury's perception of the police interview.

It has been a long-standing principle of evidence law, now codified in Rule 106 of the Kentucky Rules of Evidence:

"When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."

This case provides a prime example of the violation of this rule, wherein the trial court unfairly permitted the Commonwealth to use in evidence the inculpatory portions of the appellant's recorded statement while excising the exculpatory portions.

## III. ERRORS IN JURY SELECTION

There were three.

1) The first error was in calling a supplemental panel of jurors and merging them with the regular panel, unknown to defense counsel before the day of trial. This caused the defense to be unable in advance of trial to review the information on the jury qualification forms which are required by KRS 29A.070 and which must "be made available to parties or their attorneys of record" pursuant to subsection (7) of that statute. The opportunity to study the background of prospective jurors was vitally important in a high profile case of this nature. The procedure used violated RCr 9.30(1)(c), which states:

"When it appears that the names in the jury box are about to become exhausted, the judge may obtain additional jurors by drawing from the drum, or, with the consent of the parties, by ordering the sheriff or a bailiff appointed by the court to summon any number of qualified persons."

In *Rowe v. Commonwealth*, Ky., 394 S.W.2d 751 (1965) and *Bolen v. Commonwealth*, Ky., 252 S.W.2d 423 (1952), we acknowledged that proper method for drawing additional jurors is only after the regular panel has been exhausted.

The trial judge's position in this matter was that the jury panel had been supplemented sometime previously, and the new jurors added to the panel should be treated as part of the regular panel. But the facts are that the defense counsel, who had obtained the regular jury list and checked out their background material, had no opportunity to do so with these supplemental jurors. The court clerk claimed that the names of the supplemental jurors had been put in counsel's "box" at the courthouse, but this was unsubstantiated, and defense counsel stated, categorically, he had no supplemental jury list, or jury qualification information pertaining thereto, until after voir dire was underway and these slips were then furnished to him during trial. He asked for a continuance, but was given only five to fifteen minutes to try to evaluate this information. In short, he appears to have been sandbagged. The violation of the procedural rule for using supplemental jurors was not just technical, but substantial.

2) The trial court took upon itself to automatically excuse two educators, school principals, from jury service, when neither claimed a statutory disqualification or substantial reason for being excused. One, who was excused during the jury selection process, stated there was no reason he could not serve. Excusing educators in these circumstances was reversible error.

3) Most importantly, defense counsel moved that all persons from the nearby *Fruit of the Loom* plant where Joe Biggerstaff and Donna Janes had worked (and Donna Janes still worked), who were acquaintances should be excluded for cause, but the trial court refused to exclude those who it viewed as only casual acquaintances, defined as persons who knew the victim or the principal prosecuting witness by name, and on a "hi and goodbye, and occasional joke" basis. It is true these friends and acquaintances answered affirmatively the "magic question" as to whether they could put aside their friendship and be impartial, but these jurors should have been excluded on grounds of implied bias regardless of their affirmative answers to the "magic question." As we stated in *Montgomery v. Commonwealth*, Ky., 819 S.W.2d 713 (1991):

"[T]he 'magic question' does not provide a device to 'rehabilitate' a juror who should be considered disqualified by his personal knowledge or his past experience, or his attitude as expressed on voir dire. We declare the concept of 'rehabilitation' is a *misnomer* in the context of choosing qualified jurors and direct trial judges to remove it from their thinking and strike it from their lexicon." *Id.* at 718.

Our level of sensitivity to the constitutional guarantee of a neutral jury should not rise and fall like a barometer. There is no excuse for seating a jury of friends and acquaintances of one side or the other, albeit the court views the friendship as casual. The cold fact is that after this trial Donna Janes would be returning to the *Fruit of the Loom* plant where these jurors, whom the trial court would not excuse for cause, would have to face her on a daily basis.

Jurors who knew the victim and the prosecuting witness, and in particular the prosecuting witness who is still their co-employee, can hardly be regarded as neutral jurors. There were eight persons in this category on the petit jury panel. Four were excused by peremptory challenges by the defense which exhausted peremptory challenges by doing so, but four served on the jury. One was later excused as an alternate, and three were still on the jury that convicted the appellant.

"It is the probability of bias or prejudice that is determinative in ruling on a challenge for cause." *Pennington v. Commonwealth*, Ky., 316 S.W.2d 221, 224 (1958).

The Majority concludes Copley had "a fundamentally fair trial." While I can appreciate a certain lack of sympathy for a person who engaged in a shootout in a shopping center parking lot, I am at a loss to understand the legal basis for concluding Copley received a "fundamentally fair trial." This case should be reversed and remanded for a new trial, respecting Copley's right to be tried according to law.

* Leibson, J., would grant rehearing.

COMBS, J., joins this dissent.

LAMBERT, J., joins as to Point I.

LAMBERT, Justice, dissenting.

As explained in Justice Leibson's dissenting opinion, there was reversible error in the admission of rebuttal testimony as to an unrelated shooting incident eight months earlier. Such testimony was not probative of any disputed fact but served to prejudice appellant. This error was exacerbated by the refusal to permit appellant to adequately explain the testimony and the complete denial of any surrebuttal.