COMMONWEALTH of Kentucky, Appellant,

v.

Wilburn David FERRELL, Appellee.

No. 1999–SC–0341–DG.

Supreme Court of Kentucky.

May 18, 2000.

A.B. Chandler, III, Attorney General, Dana M. Todd, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellant.

Herbert T. West, Lexington, Counsel for Appellee.

## ISSUE

KELLER, Justice.

During Ferrell's trial testimony, the trial court sustained an objection by the Commonwealth and did not allow Ferrell to answer a question asked by his counsel. Ferrell's counsel then informed the trial court of the nature of what Ferrell's answer to the question would be, but Ferrell himself did not make a specific offer of his answer by way of avowal. Was Ferrell's avowal testimony necessary to preserve the trial court's ruling for appellate review? Because we cannot determine admissibility and prejudice issues on appeal without this witness's testimony before us, we hold that an avowal by the witness, not the attorney, is necessary to preserve the error.

## BACKGROUND

At Ferrell's jury trial on a charge of second degree escape[1] from Blackburn Correctional Complex in Fayette County, unchallenged evidence demonstrated that after serving one (1) month of a one (1) year sentence Ferrell walked away from the prison without permission prior to the 9:00 p.m. "lockdown" in his dormitory, and authorities recaptured him in Louisville the following day. Ferrell alleged in his defense that he fled the prison because other inmates had threatened him and caused him to fear for his life, and, therefore, he made a "choice of evils"[2] which would entitle him to a not guilty verdict.

Ferrell testified in his own defense and described a "clique" of five inmates with whom he was initially housed at the Blackburn Correctional Complex who intimidated and threatened him. Ferrell described one incident where a member of the group vandalized a phone which he used to phone his wife daily and then the group surrounded him as he attempted to use another phone. On another occasion, one member of the group allegedly hit and poked Ferrell in the back with a tray while in line at the mess hall. Ferrell claimed that he repeatedly and unsuccessfully sought assistance both from the prison guards and prison case workers who advised him to stand up for himself physically against the group but also advised him that a physical altercation with other inmates could extend the length of his incarceration. Eventually, however, Ferrell secured an administrative relocation to another dormitory, but within a few days, three members

---

1. KRS 520.030.

2. KRS 503.030:

    (1) Unless inconsistent with the ensuing sections of this code defining justifiable use of physical force or with some other provisions of law, conduct which would otherwise constitute an offense is justifiable when the defendant believes it to be necessary to avoid an imminent public or private injury greater than the injury which is sought to be prevented by the statute defining the offense charged, except that no justification can exist under this section for an intentional homicide.

    (2) When the defendant believes that conduct which would otherwise constitute an offense is necessary for the purpose described in subsection (1), but is wanton or reckless in having such belief, or when the defendant is wanton or reckless in bringing about a situation requiring the conduct described in subsection (1), the justification afforded by this section is unavailable in a prosecution for any offense for which wantonness or recklessness, as the case may be, suffices to establish culpability.

of the group were also relocated to the new dormitory.

During his direct examination, Ferrell's attorney attempted to solicit testimony from him relating to specific threats which he received:

Defense: Now, you said they were making some threats, can you tell me what specifically people were saying to you?

Ferrell: One of the guys that was involved with them came to me. They moved him right over top of me in A1. He came to me and he told me he said "You seem like a pretty good guy—

Commonwealth: Your honor, I'm going to object to the—

Judge: Sustained

Commonwealth: (continuing)—hearsay.

Judge: Sir, you may not testify as to anything anyone said to you unless that person is here to testify.

Ferrell: O.K., I'm sorry.

Defense: But, your Honor ... if we could approach on this.

[The attorneys then conferred at the bench]

Defense: Your Honor, we're asking him to testify to statements which led to his frame of mind. We believe that he had reason to fear these inmates. What he's about to testify to is that one of these individuals was going to warn him of specific actions that was planned to take against him.

Commonwealth: Your Honor, I would object to him being able to testify to that. If that individual actually warned him, they could have called him to testify here, and I've let a lot of hearsay go already. And I think he's stated that he had some conflicts, but I would object to him being permitted to testify as to what somebody else told him, especially for the fact that he's testified for it as the truth——that he was under this threat.

Defense: We understand that it might be hearsay, your Honor, but we——referring to the matter of self-defense, even hearsay is available if it relates to the person's state of mind as to what they reasonably might expect as a need to defend themselves.

Commonwealth: I don't think we have an issue of self-defense here.

Judge: I think that's .... I've had a hard time following this. We've already had a lot of testimony about this man, Smitty, whoever that is—

Commonwealth: I should have objected earlier.

Judge: (continuing) ——and this guard named "Red." Clearly those people are available if, in fact, they said these things. I don't think it's fair to let this defendant get into all of this stuff. If you all had wanted to get those people here, you could have gotten them here, so I'm sustaining the objection.

When the testimony continued, Ferrell testified that he had personally observed the "same crew whup a forty-seven (47) or forty-eight (48) year old guy" in the presence of a prison guard who did not intervene. After a verbal altercation with a member of the group, Ferrell claimed that he again requested assistance from officers and case workers without success. Ferrell testified that on the night he left Blackburn Correctional Complex he found a razor blade placed on his bed, which, in prison parlance, communicates a death threat to the recipient. Ferrell explained that he took the threat seriously because he felt that he would receive no protection from the prison after "lockdown," as only one guard patrolled three floors in his dormitory, and he fled the prison because of this threat.

Ferrell's trial counsel did not ask the judge to allow him to question Ferrell by way of avowal outside the presence of the jury as to the specific words of the threats communicated to his client.

The trial court found the evidence sufficient to instruct the jury as to Ferrell's "choice of evils" defense, but the jury found Ferrell guilty and recommended a

five year sentence on the second degree escape conviction. The jury recommended a total sentence of sixteen (16) years based on Ferrell's status as a first degree persistent felony offender, and the trial court followed the jury's recommendation. Ferrell appealed to the Court of Appeals, which reversed the conviction on the basis that the trial court should have permitted Ferrell to answer his counsel's question regarding the specific threats communicated to him because such threats would not constitute hearsay as the defense sought their admission not for the truth of the matter asserted, but rather to demonstrate Ferrell's state of mind. The Commonwealth sought discretionary review in this Court, which we granted, and we now reverse the Court of Appeals.

## ANALYSIS

■ KRE 103 outlines the procedures for preserving for appellate review questions regarding trial court rulings as to the admission of evidence, testimonial or otherwise:

(a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and

. . .

(2) Offer of proof. In case the ruling is one excluding evidence, upon request of the examining attorney, the witness may make a specific offer of his answer to the question.

(b) Record of offer and ruling. The court may add any other or further statement which shows the character of

the evidence, the form in which it was offered, the objection made, and the ruling thereon. It may direct the making of an offer in question and answer form.[3]

Rule of Criminal Procedure 9.52 describes this procedure with language that closely tracks KRE 103 in the context of jury and non-jury trials when the trial court sustains an objection to certain testimony:

In an action tried by a jury, if an objection to a question propounded to a witness is sustained by the court, upon request of the examining attorney, the witness may make a specific offer of his or her answer to the question. The court shall require the offer to be made out of the hearing of the jury. The court may add such other or further statement as clearly shows the character of the evidence, the form in which it was offered, the objection made, and the ruling thereon. In actions tried without a jury the same procedure may be followed, except that the court upon request shall take and report the evidence in full, unless it clearly appears that the evidence is not admissible on any ground or that the witness is privileged.[4]

In *Partin v. Commonwealth,*[5] this Court explained that trial attorneys in Kentucky must offer avowal testimony from the witness himself or herself in order to preserve such an issue for appellate review:

A review of the record discloses that appellant did not request that an examination be conducted outside the presence of the jury and offer the testimony by avowal under RCr 9.52. As stated in *Cain v. Commonwealth,* Ky., 554 S.W.2d 369 (1977), *"without an avowal to show what a witness would have said an ap-*

---

3. KRE 103. The 1992 Commentary to the Kentucky Rules of Evidence explains why litigants are required to make offers of proof:
    It is widely recognized that these requirements should be designed to serve three ends: (i) offer counsel a fair opportunity to address admissibility issues and take corrective measures when feasible; (2) provide the trial judge with sufficient information to assure correct rulings on the admission or exclusion of evidence; and (iii) *to provide a record sufficient for an appellate court to*

review decisions concerning the admissibility of evidence. These objectives are served, generally speaking, by requiring that a proper "offer of proof" be made when attempting to introduce evidence. . . .
1992 Commentary to KRE 103 (emphasis added).

4. RCr 9.52.

5. Ky., 918 S.W.2d 219, 223 (1996).

*pellate court has no basis for determining whether an error in excluding his proffered testimony · was prejudicial."* Counsel's version of the evidence is not enough. *A reviewing court must have the words of the witness.* As a result, we find this issue has not been preserved.[6]

■ In the case now before us, the Court of Appeals acknowledged this Court's holding in *Partin* but believed the evidence in this case met an exception it gleaned from *Webb v. Stone*,[7] an opinion from the predecessor to this Court. The Court of Appeals held that trial counsel need not offer avowal testimony in order to preserve an evidentiary exclusion issue for appeal when the excluded testimony's relevancy is apparent from the questioning. We find no such exception to the avowal requirement and reiterate today the holding we reached in *Partin*—an alleged error in the trial court's exclusion of evidence is not preserved for appellate review unless the words of the witness are available to the reviewing court.

*Webb v. Stone* involved litigation stemming from a fatal car accident which killed both the driver and passenger. The passenger's estate brought suit against the driver's estate and alleged that the driver had negligently operated the vehicle prior to the accident by driving at a high rate of speed. The driver's estate sought to bar any recovery by the passenger's estate on the grounds of contributory negligence, and attempted to introduce testimony as to the results of a blood alcohol analysis taken from the bodies of the driver and passenger for the purpose of demonstrating that the passenger was aware of the driver's intoxication and was himself negligent in riding with an intoxicated driver. The trial court refused to allow the defendant driver's estate to introduce testimony of the blood alcohol analysis, but the defendant did present, by way of avowal, testimony that both driver and passenger had quantities of alcohol in their systems. The trial court directed a verdict on the liability issue in favor of the plaintiff passenger's estate, and the defendant driver's estate appealed.

Unlike the case now before us, the main issue in *Webb v. Stone* did not relate to the *substance* of the excluded testimony, which had been firmly established by the avowal testimony relating to the percentages of alcohol in the two men's systems, but rather the *significance* or *relevance* of that evidence. The driver's estate introduced no evidence connecting the percentages of alcohol found with drunkenness:

> It is true that the defendant herein did not make any avowal as to the significance of an alcoholic content of 0.20 percent (or 0.10 percent) in the blood as relates to a showing of the extent of drunkenness.[8]

In *Webb v. Stone*, the Court held that the defendant driver's estate · did not need to establish by a separate avowal the relevance of the testimony excluded by the trial court because the blood alcohol concentration evidence allowed a reasonable inference that the two men had been drinking together and that the passenger was aware of the driver's intoxication:

> We are concerned in this appeal only with the question of whether the defendant's failure in the instant case to make an *avowal* as to the significance of the alcohol contents shown by his other avowal testimony bars him from claiming prejudice from the trial court's refusal to admit the evidence of the alcoholic-content percentages. The question is whether the *relevancy* of the evidence that was offered is sufficiently apparent to this court to warrant a conclusion that the exclusion of the evidence was prejudicial. We think it is. Certainly when the legislature has said, in KRS 189.520, that an alcoholic-content percentage of as much as 0.15 percent creates a presumption that the person is under the

---

6. *Id.* at 223 (citations deleted and emphasis added).

7. Ky., 445 S.W.2d 842, 844–45 (1969).

8. *Id.* at 844.

influence of intoxicating liquors to such an extent as not to meet the qualifications prescribed by the legislature for drivers, it would be strange indeed for this court to say that a showing of a percentage of 0.20 percent does not indicate to us any relevancy of the question of capacity to drive.[9]

The case before us today is very different. Ferrell has asked the appellate courts of this state to hold that the trial court committed prejudicial error by not permitting him to answer a question, but has not supplied us with the answer to that question by means of avowal. Unlike the Court in *Webb v. Stone*, which knew exactly what evidence the trial court had excluded and only had to wrestle with whether the exclusion was prejudicial, in order to evaluate Ferrell's argument, a reviewing Court would have to: (1) guess as to what Ferrell's answer to counsel's question concerning the specific threats would have been;[10] (2) determine whether the trial court erred in excluding such testimony; and then (3) determine whether any error was prejudicial or harmless.[11] An appellate court simply cannot address admissibility and prejudice issues in a vacuum, and RCr 9.52 provides parties with a procedure which allows them to include within the record the words of their witnesses so that appellate courts can review their claims. Based on the record before us in this case, we can not determine whether the trial court erred in sustaining the Commonwealth's objection, and we cer-

tainly can not make any meaningful determination of how any error prejudiced the defendant in light of the other evidence admitted at trial. Accordingly, we reaffirm our holding in *Partin* that a party must offer an avowal *by the witness* in order to preserve for appellate review an issue concerning the exclusion of evidence. In the case before us, we find the alleged error unpreserved for our review.

For the foregoing reasons, the decision of the Court of Appeals is reversed and the judgment of conviction is reinstated.

All concur.

---

**9.** *Id.* at 844–45.

**10.** Although Ferrell's counsel suggested to the trial court that Ferrell would describe a specific warning communicated to him by one member of the group, we have no way of knowing the nature of this warning. Ferrell may have testified that his bunkmate warned him generally to "watch his back," or told him that the group had plans to attack him on a given night. The form of the alleged warning is significant both in relation to the question of admissibility, as it could have taken the form of multiple hearsay (e.g., "X told me that Y told him that the gang is going to get you"), and in relation to the question of prejudice. Without an avowal, or a crystal ball,

reviewing courts can never know with any certainty what a given witness's response to a question would have been if the trial court had allowed them to answer. Appellate courts review records; they do not have crystal balls.

**11.** Ferrell's argument that this Court should evaluate this issue pursuant to RCr 10.26 (palpable error) if we determine his failure to offer an avowal renders it unpreserved only magnifies this problem. Not only would we have to find prejudice, but we'd have to determine, without knowing Ferrell's answer to his counsel's question, that "manifest injustice has resulted from" the trial court's ruling which did not permit Ferrell to answer.