**Norman Christopher HART, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2000–SC–0950–DG.

Supreme Court of Kentucky.

Sept. 18, 2003.

Carol Johnson, Hopkinsville, Counsel for Appellant.

A.B. Chandler III, Attorney General, Courtney J. Hightower, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

GRAVES, Justice.

Appellant, Norman Christopher Hart, was convicted in the Christian Circuit Court for the first-degree rape of a thirteen-year-old female, L.W., and was sentenced to ten years imprisonment. The Court of Appeals affirmed his conviction and this Court thereafter granted discretionary review. For the reasons set forth herein, we affirm the decision of the Court of Appeals.

At trial, Lucy Davis, a DNA expert with the Kentucky State Police Laboratory, testified, without objection, via closed circuit camera from the KSP crime laboratory in Frankfort. During the Commonwealth's direct examination, Davis testified that she analyzed samples obtained from the sexual assault kit administered to L.W. and determined that the male DNA extracted from the vaginal swab matched the DNA profile of Appellant in four out of five polymorphic genetic low sites. Davis stated that the statistical probability of finding this particular DNA profile in the African–American population was 1 in 125 million.

On cross-examination, Davis described the analysis of the evidence as a two-step process. First, an autoradiogram is viewed to determine if the two DNA profiles align visually. Davis explained that an autoradiogram is an x-ray film that has a banding pattern which is part of the DNA profile. Davis then described the second step of the process, referred to as a calculated match, which generates a computer printout representing the approximate base pair size of each piece of DNA.

The camera transmission was insufficient to allow Davis to clearly display the autoradiogram and computer printout to the jury during her testimony.

At a bench conference, defense counsel inquired about having the autoradiogram and computer printout introduced into evidence. Although the Commonwealth offered to obtain copies by fax, defense counsel objected on the grounds that the original documents were the best evidence. The trial court ruled that Davis' testimony was, in fact, the best evidence and that there was no need to admit what the trial court considered demonstrative evidence and the work product of the expert.

On appeal, the Court of Appeals upheld the trial court's ruling. However, the Court of Appeals concluded that the autoradiogram and the computer printout were both admissible and relevant, but unavailable since the trial was held in Hopkinsville and Davis testified from Frankfort with the autoradiogram and computer printout in her possession. The Court of Appeals further noted that Appellant neither objected to Davis' testimony via closed circuit television, nor moved for a continuance so that the original documents could be obtained.

We agree with the Court of Appeals opinion only insofar as the computer printout and autoradiogram were both admissible and relevant evidence. KRE 705 permits cross-examination to disclose the "underlying facts or data" supporting an expert's opinions and inferences, and the excluded forensic evidence is of a type generally admissible at trial. However, we are compelled to affirm Appellant's conviction because, as we will explain, this matter has not been properly preserved for appellate review.

KRE 103 sets forth the procedure for preserving claims of error relat-

ing to evidentiary rulings which exclude evidence:

(a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and

. . . .

(2) Offer of Proof. In case the ruling is one excluding evidence, upon request of the examining attorney, the witness may make a specific offer of his answer to the question.

(b) Record of offer and ruling. The court may add any other or further statement which shows the character of the evidence, the form in which it was offered, the objection made, and the ruling thereon. It may direct the making of an offer in question and answer form.

RCr 9.52 tracks the language of KRE 103, and although both are "couched in terms of preserving oral testimony," they apply equally to questions regarding the introduction of real evidence. *Garrett v. Commonwealth*, Ky., 48 S.W.3d 6, 15 (2001).

These rules are not mere technicalities or traps for the unwary. As noted by the 1992 Commentary to the Kentucky Rules of Evidence, offers of proof and avowals serve to:

(i) offer counsel a fair opportunity to address admissibility issues and take corrective measures when feasible; (ii) provide the trial judge with sufficient information to assure correct rulings on the admission or exclusion of evidence; and (iii) *provide a record sufficient for an appellate court to review decisions concerning the admissibility of evidence.* These objectives are served, generally speaking, by requiring that a proper "offer of proof" be made when attempting to introduce evidence. . . .

1992 Commentary to KRE 103 (emphasis added).

In the present matter, we must determine whether the trial court's erroneous exclusion of forensic evidence was prejudicial or merely harmless. In order to do so, the record must contain sufficient information for this Court to assess the harm stemming from the trial court's ruling. "Prejudice will not be presumed from a silent record." *Baze v. Commonwealth*, Ky., 965 S.W.2d 817, 824 (1997), *citing Walker v. Commonwealth*, Ky., 476 S.W.2d 630, 631 (1972).

The record here is certainly not silent, for the video transcript reveals the general nature of the excluded evidence. The dark bands on the autoradiogram are visible, and some writing can be detected on the computer printout. However, the remote closed-circuit transmission was of such poor quality that no details of either item are visible, despite the expert's attempts to display them for the jury.

A reviewing court requires more than the general substance of excluded evidence in order to determine whether a defendant has suffered prejudice. In *Partin v. Commonwealth*, Ky., 918 S.W.2d 219 (1996), we held that a description of proposed testimony by defense counsel was insufficient to preserve an alleged error in the exclusion of evidence for review. "Counsel's version is not enough. A reviewing court must have the words of the witness." *Id.* at 223. More recently, in *Commonwealth v. Ferrell*, Ky., 17 S.W.3d 520 (2000), we reaffirmed our holding in *Partin*, stating: "a party must offer an avowal by the witness in order to preserve for appellate review an issue concerning the exclusion of evidence." *Id.* at 525.

A decision in favor of Appellant would require us to assume that there was a substantial possibility the jury would have reached a different verdict if the evidence had not been excluded. *Taylor v. Com-*

*monwealth,* Ky., 995 S.W.2d 355 (1999); *Commonwealth v. McIntosh,* Ky., 646 S.W.2d 43 (1983). We decline to engage in such guesswork without the actual evidence before us. "Without an avowal, or a crystal ball, reviewing courts can never know with any certainty what a given witness's response to a question would have been if the trial court had allowed them to answer. Appellate courts review records; they do not have crystal balls." *Ferrell, supra,* at 525 n. 10.

In order to preserve this issue for appellate review, Appellant needed only to request that the excluded items be entered into the record by offer or avowal. KRE 103; RCr 9.52. The distance between Hopkinsville and Frankfort is such that a one-day continuance would have allowed more than sufficient time for defense counsel to obtain the documents. A refusal by the trial court to allow this offer would have constituted reversible error, since a reviewing court would have no means by which it could adjudicate whether the exclusion of evidence was prejudicial. *Jones v. Commonwealth,* Ky., 623 S.W.2d 226, 227 (1981); *Powell v. Commonwealth,* Ky., 554 S.W.2d 386, 390 (1977); *Perkins v. Commonwealth,* Ky.App., 834 S.W.2d 182 (1992).

Because counsel failed to take the necessary steps to preserve the autoradiogram and computer printout by avowal, we have no means to discern from the record whether Appellant was prejudiced by the trial court's erroneous exclusion of this evidence. Thus the matter is not preserved for our review.

Therefore, both the judgment and sentence of the Christian Circuit Court are affirmed.

LAMBERT, C.J., GRAVES, KELLER, and WINTERSHEIMER, J.J. concur.

COOPER, J., dissents in a separate opinion in which JOHNSTONE, and STUMBO, J.J. join.

COOPER, Justice, dissenting.

Lucy Davis is the DNA section supervisor at the Kentucky State Police Forensic Laboratory in Frankfort. She testified at Appellant's trial by closed circuit television from her Frankfort office. As is the norm with DNA evidence, Davis's testimony was highly technical almost to the point of being incomprehensible to a layperson. One suspects that the only thing the jurors really understood from her testimony was that there was only one chance in 125,000,-000 that any other African–American male except Appellant could have committed this crime. After twice viewing the videotape of Davis's testimony (mostly futile attempts at cross-examination), I believe a fair summary is that she based her ultimate opinion that the probability of Appellant's innocence was only 1/125,000,000 on (1) her visual comparison of the alignments of DNA bands shown on an autoradiogram, which is produced on an x-ray film; (2) a computer measurement of "pieces" of DNA as reflected on the computer printout; and (3) a population data base developed by the F.B.I. laboratory in Washington, D.C., the accuracy of which was neither established nor challenged. According to Davis, the DNA bands on the autoradiogram must be aligned and the DNA "pieces" on the computer printout must be within 2.5% of each other in measurement before they are considered a "match." Apparently, the autoradiogram is scanned into the computer which then calculates the measurements. Thus, Davis's opinion was based on her visual inspection of the DNA alignments as shown on the autoradiogram and her interpretation of the computer calculations shown on the printout.

Defense counsel moved that the autoradiogram and the printout be introduced into evidence so that he and the jurors could see for themselves whether the DNA samples shown on the autoradiogram were, in fact, aligned and whether the "pieces" of DNA reflected on the computer printout were, in fact, within 2.5% of each other. Unfortunately, the closed circuit television technology used for Davis's testimony was of insufficient quality to permit the jury to view the actual contents of these items of evidence. The camera in Frankfort was out of focus, and the words "Remote Site Is Active" constantly flashed on and off in the center of the monitor in Hopkinsville.

The trial judge overruled the motion to introduce the evidence on grounds that (1) the autoradiogram and the computer printout were "demonstrative aids," not evidence, and (2) these items were inadmissible because they were the "work product" of the witness. Of course, the autoradiogram and computer printout were not "demonstrative aids" but were the evidentiary bases for Davis's expert opinion. A demonstrative aid, sometimes referred to as a "visual aid," is something that elucidates a witness's testimony, *e.g.*, an anatomically correct doll used by a child sex abuse victim to explain the nature of the abuse, *Stringer v. Commonwealth*, Ky., 956 S.W.2d 883, 886–87 (1997), or a human skeleton used by a doctor to demonstrate the nature of a physical injury. Appellant's purpose in seeking admission of the autoradiogram and computer printout was not to elucidate Davis's testimony but to challenge her interpretation of the contents of those items of evidence. Suffice it to say, the "work product" rule is a discovery rule that applies only to the work product of a party's attorney or representative. CR 26.02(3)(a). It has nothing to do with the admissibility of evidence providing the basis for a witness's expert opinion.

The Court of Appeals held that the proposed evidence was excludable neither as "demonstrative aids" nor as "work product" but rather was both relevant and admissible. However, it then determined that the evidence was "unavailable" because it was in Frankfort whereas the trial was in Hopkinsville. I agree with the majority opinion that such is an insufficient basis for exclusion. Hopkinsville is only a four-hour drive from Frankfort (less by way of state police cruiser, per empirical evidence, and much less by way of state police helicopter). The short delay to transport this evidence to Hopkinsville would have extended this one-day trial for no more than one additional day.

However, after searching mightily, as did the trial judge and the Court of Appeals, for some basis to justify an affirmance, the majority of this Court now concludes that (A) although the trial court's bases for excluding the evidence were erroneous, and (B) the Court of Appeals' basis for excluding the evidence was erroneous, (C) the conviction can be affirmed because (1) defense counsel did not offer the excluded evidence by avowal; and (2) defense counsel did not request a continuance so as to obtain the evidence for the purpose of offering it by avowal.

## I. AVOWAL?

A party cannot offer by avowal evidence that is in the physical custody of the opposing party at a place other than where the trial is being held. More importantly, however, the purpose of an avowal is to make the substance of the evidence known to the court. Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 1.10, at 23 (3d ed. Michie 1993). *See also Webb v. Stone*, Ky., 445 S.W.2d 842, 844–45 (1969) (where the substance of the excluded evi-

dence was known and only its relevance was at issue, an avowal as to its relevance was not required), *distinguished by Commonwealth v. Ferrell,* Ky., 17 S.W.3d 520, 524–25 (2000). We already know the substance of the evidence in this case, *i.e.*, an autoradiogram showing the alignments of DNA bands and a computer printout showing measurements of "pieces" of DNA. It is Davis's interpretation of that evidence that is at issue. Davis relied on her interpretation of that evidence in forming her opinion that the probability of Appellant's guilt was 125,000,000 to one, but defense counsel was precluded from examining the same evidence to determine and possibly attack the credibility of Davis's interpretations. The upshot, of course, was that Davis was permitted to rely on her interpretations of the excluded evidence to support her opinions on direct examination and to rebut defense counsel's questions on cross-examination. Yet, no one else was permitted to even see the evidence. If an expert can use real evidence to support her conclusions but preclude the defendant and the jury from examining the same evidence to test the credibility of her testimony, we might as well throw away the key—and KRE 705 as well.

Surely, the majority of this Court does not suggest that if we had the evidence before us by way of avowal we would examine it ourselves to see if we agree or disagree with Davis's interpretation. It is not the function of an appellate court to determine whether an expert's testimony is credible. That is for the jury to decide, and the jury that convicted Appellant was not given that opportunity. We do not need an avowal to know that the Sixth Amendment of the United States Constitution and Section 11 of the Constitution of Kentucky

entitle a criminal defendant to at least see the evidence upon which he is being convicted.

The majority opinion's reliance on *Garrett v. Commonwealth,* Ky., 48 S.W.3d 6 (2001), is misplaced. In *Garrett,* defense counsel wanted to introduce the victim's entire diary in response to the Commonwealth's introduction of one redacted page. *Id.* at 14–15. The diary was in the courtroom and, in fact, defense counsel had already questioned the victim about other selected passages. Because Appellant did not tender the diary as an avowal exhibit, neither the trial court nor this Court could determine whether it contained any other information relevant to the victim's credibility or any other issue at trial. Here, we know the evidence was both relevant and admissible (the majority opinion even so holds, *ante,* at 482). It was also never in the courtroom and was unavailable even for inspection by defense counsel and the jury, much less for proffer as an avowal exhibit.

## II. CONTINUANCE?

The majority opinion holds that defense counsel should have requested a continuance in order to obtain the documents so that he could offer them by avowal. No motion for a continuance was necessary because no continuance was required.[1] First, as noted in Part I above, there was no need for an avowal. Second, defense counsel demanded that the documents be produced in Hopkinsville so that he and the jury could see for themselves whether the DNA bands on the autoradiogram were aligned and whether the DNA "pieces" on the computer printout were within 2.5% of each other in measurement. Compliance with that demand would have

---

1. A "continuance" is an adjournment or postponement of a trial to a future date. *Black's Law Dictionary* 316 (7th ed.1999). A "re-

cess" is a brief break in judicial proceedings. *Id.* at 1275.

required a four-hour recess at most; thus, the demand, itself, was a request for that recess.

The prosecutor first suggested that the autoradiogram and the computer printout might be obtained by facsimile transmission ("fax"). Although defense counsel suggested that a facsimile copy would not be the "best evidence," a facsimile is, in fact, a "duplicate" under KRE 1001(4) and admissible under KRE 1003. *See, e.g., Ingram v. State,* 48 Ark.App. 105, 891 S.W.2d 805, 806–07 (1995); *Adams v. State,* 217 Ga.App. 706, 459 S.E.2d 182, 183 (1995); *State v. Carter,* 762 So.2d 662, 681 (La.Ct.App.2000); *People v. Miller,* 199 A.D.2d 692, 605 N.Y.S.2d 160, 162 (1993); *Englund v. State,* 946 S.W.2d 64, 71 (Tex. Crim.App.1997); *State v. Smith,* 66 Wash. App. 825, 832 P.2d 1366, 1368 (1992). However, a facsimile transmission was not possible in this case because an autoradiogram is not a paper document, but a film, and the available fax machines were incapable of transmitting a film.

The trial court did not rule that the documents were unavailable because they were in Frankfort (that was the Court of Appeals' theory). Instead, upon being advised that the documents could not be faxed, he simply avoided delaying the trial under the pretext that the documents were not "evidence." Strangely, while correctly holding that the documents are evidence and clearly admissible under KRE 705, the majority opinion criticizes trial counsel for failing to make another request for a recess on the additional grounds that he needed to offer the documents by avowal so that this Court could examine them and determine whether the improper exclusion was "harmless error." Of course, any additional request to delay the trial for this purpose after the trial judge had ruled that the documents were not "evidence" would have been an obvious exercise in futility. Further, the only way this Court could decide that this error was harmless would be for us to decide that we agreed with Davis's interpretation—and, as noted in Part I of this dissent, *supra,* it is not the function of an appellate court to pass on the credibility of witnesses.

## III. HARMLESS?

Nevertheless, there is no circumstance under which this Court could possibly hold that the failure to permit defense counsel and the jury to view and decide for themselves the credibility of the evidence used to convict Appellant of this crime could be "harmless." The autoradiogram and the computer printout provided the bases for Davis's opinion that only one African–American male out of 125,000,000 (guess who?) could have the same DNA match that she believed was reflected by the autoradiogram and the computer printout. One-hundred twenty-five million is almost four times the total number of African–Americans (thus, presumably, eight times the number of African–American males) presently residing in the United States of America.[2] Hardly harmless. In fact, the evidence is so prejudicial that a number of jurisdictions hold that, while the existence of a DNA "match" is relevant and admissible if proper procedures were followed, statistical probability calculations associated therewith are inadmissible primarily because of their exaggerated impact on the jury. *E.g., People v. Wallace,* 14 Cal. App.4th 651, 17 Cal.Rptr.2d 721, 725 (1993); *People v. Lipscomb,* 215 Ill.App.3d

**2.** 34,658,190 "black or African–American" persons presently reside in the United States. *See* U.S. Census Bureau, Census 2000 Redistricting Data (Public Law 94–171) Summary File, Table PL 1, *at* http://www.census.gov/prod/2001pubs/c2kbr01–5.pdf (visited Jan. 24, 2003).

413, 158 Ill.Dec. 952, 574 N.E.2d 1345, 1359 (1991); *State v. Schwartz,* 447 N.W.2d 422, 428–29 (Minn.1989).

## IV. CONCLUSION.

No doubt, modern technology can be of great assistance and convenience in the conduct of jury trials. Here, closed circuit television technology enabled Davis to testify against Appellant without the inconvenience of a four-hour trip from Frankfort to Hopkinsville, and the trial judge's erroneous ruling that the bases for Davis's expert opinion were not "evidence" avoided the inconvenience of transporting the evidence from Frankfort to Hopkinsville. Nevertheless, convenience must give way to a criminal defendant's right to Due Process. Defense counsel and the jurors were entitled to see for themselves the evidence that formed the bases for Davis's opinion that the probability of Appellant's guilt was 125,000,000 to one. Both the Court of Appeals and this Court agree. Yet, each has found its own pretext for affirming the trial court's pretext for avoiding a four-hour delay of the trial. Let the outcome of this case be fair warning to all criminal defense counsel to *never* agree that a Commonwealth's witness may testify by closed circuit television transmission and to *always* demand a face-to-face confrontation with the witnesses against the defendant and the evidence relied upon by those witnesses. Ky. Const. § 11. No doubt, requiring the personal attendance of laboratory personnel at every trial will cause further backlogs and delays in processing evidence at the crime laboratory. However, that is the price that must be paid for Due Process.

Fortunately for Appellant, the majority opinion's holding that his conviction must be affirmed solely because of defense counsel's failure to offer an avowal assures the ultimate success of his inevitable claim that his conviction must be vacated because of ineffective assistance of counsel. RCr 11.42. Unfortunately for Appellant, the five-year delay already consumed by these appeals plus the additional delay in processing his RCr 11.42 motion may reduce that success to a Pyrrhic victory, at best. (The record before us does not reflect that Appellant was able to post the $25,000 cash bond on appeal.)

Accordingly, I respectfully dissent and would reverse Appellant's conviction and remand this case to the Christian Circuit Court for a new (one-day) trial.

JOHNSTONE, and STUMBO, JJ., join this dissenting opinion.