James E. CALDWELL a/k/a James Caldwell, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Nos. 2002–SC–0410–MR, 2003–SC–0155–TG.

Supreme Court of Kentucky.

March 18, 2004.

As Modified on Denial of Rehearing and Grant of Modification May 20, 2004.

**448**

Gail Robinson, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Ian G. Sonego, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellee.

WINTERSHEIMER, Justice.

Caldwell appeals from a judgment based on a jury verdict which convicted him of one count of murder and theft over $300. He was sentenced to life in prison and five years concurrently. Caldwell also appeals from an order denying his motion for a new trial based on newly discovered evidence. We have consolidated these two appeals in order to render one opinion.

The questions presented are whether Caldwell was denied his right to confront a witness; whether Caldwell was entitled to an instruction on intoxication and lesser included offenses; whether the jury should have been instructed on the unauthorized use of an automobile; whether prosecutorial misconduct occurred at the guilt phase; whether Caldwell was properly transferred from juvenile court to circuit court; whether prosecutorial misconduct occurred during the penalty phase, and whether the trial judge properly denied the motion for new trial.

Caldwell and the Commonwealth offer a detailed factual account of this case, but for the purposes of this opinion, we recite a relatively brief summary. The two vic-

tims were found shot to death inside the home of one of those victims. One victim had died from three shotgun wounds at close range. His wallet, recovered at the scene, contained no money. The other victim had died from two gun shot wounds at intermediate range, which came from a firearm other than a shotgun. His pocket was turned inside out and his empty money clip lay next to his body. Both victims had a high level of blood alcohol intoxication.

Caldwell, then 14–years–old, his sister-in-law, his sister and her friend were at the victim's home that night on a social visit. At some point, the sister and her friend left while Caldwell and his sister-in-law remained behind. It is undisputed that Caldwell was inside the victim's home at the time the shooting occurred and that his sister-in-law was either inside the home or just outside the home at that same time. It is also uncontroverted that both of them fled the scene in the pickup truck belonging to one of the victims.

Upon being transferred from juvenile court to circuit court, Caldwell was tried as an adult on two counts of murder, two counts of first-degree robbery and one count of theft over $300. At his trial, among other evidence, the Commonwealth presented expert testimony that there was a high probability that Caldwell's blood matched a comparison taken from a shotgun shell. Apparently, Caldwell had cut his finger that night. A sample taken from the shotgun was also determined to be consistent with a mixture of Caldwell's blood and one of the victims. Another expert testified that Caldwell's thumbprints matched latent prints found on the shotgun. No other prints were found on the weapon.

In addition to the physical evidence, Caldwell's sister-in-law, with whom Caldwell admitted having a physical relationship, testified against him. According to the sister-in-law, Caldwell told her to leave the house just before the murders occurred because something bad was going to happen. She was not aware of anyone else inside the house except Caldwell and the two victims. While outside, the sister-in-law heard a gunshot, started to flee and then heard several more shots. After going a short distance down the road, Caldwell picked her up in the victim's truck and they fled the area. The pair encountered a police roadblock and, in an attempt to avoid it, Caldwell drove the truck into a ditch. She and Caldwell abandoned the truck and fled police on foot.

Another witness, an acquaintance of Caldwell's, testified that Caldwell came to his home that night and asked to use the phone. Caldwell paid him $19 for some clothes he provided. The witness admitted burning the clothes Caldwell left behind. The money, which the acquaintance turned over to police, proved to have Caldwell's blood on it. Eventually, Caldwell told the acquaintance what happened at the victim's home. According to him, Caldwell admitted shooting both victims after one of them grabbed his sister-in-law inappropriately. This witness denied shooting either victim or being at the victim's home that night.

Caldwell, who was 16–years–old at the time of trial, testified in his own defense and denied killing or robbing the victims. He alleged that his sister-in-law and the acquaintance mentioned above were responsible for the crimes. Caldwell acknowledged mixing alcohol and Xanax earlier in the day and drinking eleven or twelve beers while at the victim's home. He explained that the money he gave to the acquaintance was to repay a debt and that his blood was found on the shotgun because he took it away from his sister-in-law after one of the victims was shot. Caldwell admitted that he drove off in the

victim's pickup truck with his sister-in-law and alleged his acquaintance was with them. He also admitted driving the vehicle into a ditch in order to avoid a police roadblock and fleeing from police.

The jury convicted Caldwell of one count of murder and theft over $300. It acquitted him of the other three charges. The jury recommended that Caldwell be sentenced to life imprisonment for the murder, five years imprisonment for the theft, and that the sentences run consecutively. The trial judge imposed the same terms except that he ran the sentences concurrently. He also ordered that Caldwell, as a youthful offender, be placed with the department of juvenile justice until he reaches the age of eighteen and then to be returned to circuit court for final sentencing.

Approximately four months after final judgment was entered, counsel for Caldwell filed a motion for a new trial based on grounds of newly discovered evidence. The motion was supported by an affidavit from trial co-counsel which alleged that Caldwell's sister-in-law admitted to him that she killed the victim whom Caldwell was convicted of killing. When co-counsel sought to videotape her admission, she refused.

The trial judge heard oral arguments on the motion for a new trial on September 30, 2002. Defense counsel noted that the sister-in-law had failed to honor a subpoena that had been served on her. The Commonwealth objected to the defendant's co-counsel, who filed a motion to withdraw, testifying about hearsay statements allegedly made by the sister-in-law. The trial judge denied the motion for a new trial. These appeals followed.

## I. Defense Counsel Testimony

■ Caldwell argues that the trial judge deprived him of his right to confront a witness when he refused to permit defense counsel to testify to the alleged prior inconsistent statements of a witness. At trial, defense counsel presented a witness whom they obviously hoped would admit having taken Caldwell and another male individual to the victim's home the night of the murders. If true, this testimony would have lent credibility to Caldwell's claim that his acquaintance was there that night and shot one of the victims. When the witness took the stand, however, he denied all knowledge about the crime and denied ever telling defense counsel that he transported Caldwell and another male individual to the victim's home. Following his testimony, defense counsel moved to allow co-counsel to take the stand and impeach the witness' testimony. The Commonwealth objected based on the canon of ethics and the trial judge denied the motion. Defense counsel did not seek to introduce the proposed evidence by avowal.

■ A trial court ruling excluding evidence must be preserved for appellate review by an avowal of the witness. KRE 103(a)(2); *Commonwealth v. Ferrell*, Ky., 17 S.W.3d 520 (2000). Otherwise, the reviewing court has no way of knowing exactly what testimony was excluded and whether the exclusion was prejudicial to the offering party. *Ferrell, supra.* "Counsel's version of the evidence is not enough. A reviewing court must have the words of the witness." *Partin v. Commonwealth*, Ky., 918 S.W.2d 219, 223 (1996). It makes no difference here that defense counsel and the witness are one in the same. There was no testimony offered in court under oath.

■ We must observe that in future cases the decision of the trial judge to permit or deny counsel the right to testify will be reviewed for an abuse of discretion. *Cf. Zurich Ins. Co. v. Knotts*, Ky., 52 S.W.3d 555 (2001). Further, we agree

with the rationale of *State v. Caldwell,* 117 Ariz. 464, 573 P.2d 864 (1977), that when defense counsel seeks to testify in order to impeach a witness, the burden is upon him to propose the solution of his withdrawing from the case. The trial judge is not obligated to offer that solution. In most circumstances where the testimony relates to a contested issue and defense counsel does not withdraw from the case, there will be no finding of an abuse of discretion when the trial judge does not permit him to testify.

## II. Intoxication Instruction

■ The claim by Caldwell that the trial judge erred by failing to instruct the jury on intoxication and lesser included offenses is not properly preserved for appellate review. RCr 9.54(2) provides:

No party may assign as error the giving or the failure to give an instruction unless he has fairly and adequately presented his position by an offered instruction or by motion, or unless he makes objection before the court instructs the jury, stating specifically the matter to which he objects and the ground or grounds of his objection.

■ Caldwell concedes that he did not object to the jury instructions given by the trial judge. The failure to comply with RCr 9.54(2) has consistently been interpreted to prevent review of claimed error in the instructions because of the failure to preserve the alleged error for review. *Commonwealth v. Thurman,* Ky., 691 S.W.2d 213 (1985). Review pursuant to RCr 10.26 is unwarranted. Caldwell completely denied killing or robbing either of the victims and it can be fairly deduced from the record that defense counsel sought an all or nothing strategy.

## III. Unauthorized Use of a Vehicle

■ The trial judge did not err in declining to instruct the jury on unauthorized use of a motor vehicle as a lesser offense of theft. KRS 514.100 defines the offense of unauthorized use of an automobile:

A person is guilty of the unauthorized use of an automobile or other propelled vehicle when he knowingly operates, exercises control over, or otherwise uses such vehicle without consent of the owner having legal possession thereof.

The penal code commentary to this statute explains that the offense of unauthorized use of an automobile provides criminal sanctions for conduct that does not rise to the level of the Kentucky penal code theft offenses:

This section is directed primarily against "joy riding" generally committed by youngsters. It is necessary because it covers conduct not amounting to theft under other sections of this chapter. There is no intention to deprive the owner of his property or to appropriate property.

The critical issue is whether the evidence would reasonably have supported a belief that Caldwell possessed the vehicle with the intention of restoring it to its owner—but otherwise conclude beyond a reasonable doubt that he knowingly operated an automobile without the owner's consent. *Lawson v. Commonwealth,* Ky., 85 S.W.3d 571 (2002). The evidence at trial was that Caldwell left the scene of the homicides in the pickup truck of a deceased victim and then made every effort to escape from police and avoid arrest. There is no credible evidence that Caldwell intended to return the pickup truck to the victim or his residence. The trial judge properly denied Caldwell's requested lesser-included offense instruction. There was no error.

## IV. Prosecutorial Misconduct

■ Caldwell argues that prosecutorial misconduct denied him a fair trial. He

presents two separate arguments regarding this issue which we will address separately. First, Caldwell contends that the prosecutor improperly commented on his right to remain silent. During cross-examination, the prosecutor asked Caldwell about having a long time to come up with a story to explain the evidence with the assistance of his attorney. Defense counsel objected, but offered no grounds for his objection. The trial judge overruled that objection. Caldwell then responded by saying that he did not need time to come up with a story because he was telling the truth. On appeal, Caldwell argues that the Commonwealth's question improperly commented on his right to remain silent.

The argument by Caldwell is speculative and without merit. There is no evidence that the prosecutor's comment about Caldwell's failure to report information came as a result of police-initiated interrogation. Moreover, during direct examination, defense counsel elicited from Caldwell that he did not report what he knew about the homicides to anyone. No error occurred.

▮ Second, Caldwell claims that the prosecutor made disparaging comments about his defense counsel during his closing argument. His specific complaints concern the statements by the prosecutor that defense counsel had "met his match" in regards to a witness for the Commonwealth; that defense counsel had engaged in "lawyer tactics"; and that "somebody" had got a witness to say what she said.

▮ This issue is not preserved for appellate review. Our review of the record demonstrates that defense counsel did not object to any of these statements. The only objection made was when the Commonwealth indicated that evidence that Caldwell's acquaintance killed the victims came from defense counsel. The trial judge admonished the jury on that issue and defense counsel sought no further relief. The failure to move for a mistrial following an objection and admonition indicates satisfactory relief. *Derossett v. Commonwealth,* Ky., 867 S.W.2d 195 (1993).

▮ In order to justify reversal of a conviction, misconduct of the prosecutor must be so serious as to render the entire trial fundamentally unfair. *Slaughter v. Commonwealth,* Ky., 744 S.W.2d 407 (1987). The prosecutor may comment on the trial tactics of defense counsel, may comment on the evidence, and may comment on the falsity of the defense position in light of the evidence. *Slaughter, supra.* The prosecutor may comment on the credibility of the defendant when he elects to testify at trial. *Tamme v. Commonwealth,* Ky., 973 S.W.2d 13 (1998). Our review of the record demonstrates no prosecutorial misconduct which would require reversal.

### V. Juvenile Transfer

▮ Caldwell argues that he was denied a full and fair transfer hearing in juvenile court when that court only conducted a KRS 635.020(4) "automatic transfer" hearing. He contends that the process is flawed because it violates the due process requirements of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the fair hearing requirements of *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) and the equal protection clause. We disagree.

KRS 635.020(4) provides that a child shall be transferred to circuit court if, following a preliminary hearing, the district court finds probable cause to believe the following three factors: 1) that the child has committed a felony; 2) that he was over 14 years of age at the time of the offense; and 3) that a firearm was used in the commission of that felony. It is misleading for Caldwell to characterize KRS

635.020(4) as an "automatic transfer" statute.

*Apprendi, supra,* requires that any fact other than that of a prior conviction which increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and determined by the jury to be true beyond a reasonable doubt. The rationale of that case has been applied to juvenile transfer proceedings by the Massachusetts Supreme Court in *Commonwealth v. Quincy Q.,* 434 Mass. 859, 753 N.E.2d 781 (2001). Caldwell urges this Court to adopt the rationale of *Quincy Q., supra,* which would require the Commonwealth to prove the "automatic transfer" factors beyond a reasonable doubt in juvenile court, submit them to the grand jury and have them included in the instructions to the jury. We decline to adopt such a requirement. Instead, we are persuaded by the view of those states which have concluded that *Apprendi* does not apply to juvenile proceedings. *See e.g., State v. Jones,* 273 Kan. 756, 47 P.3d 783, 796 (2002), *cert. denied* 537 U.S. 980, 123 S.Ct. 444, 154 L.Ed.2d 341 (2002).

A juvenile transfer proceeding does not involve sentencing or a determination of guilt or innocence. The decision to transfer a juvenile to circuit court involves the determination of which system is appropriate for a juvenile defendant. We recognize that a juvenile transferred to circuit court and tried as an adult offender will be exposed to the statutory maximum sentence on the applicable criminal statute, which in most cases will exceed the statutory maximum disposition in the juvenile system.

■■■ The Kentucky juvenile transfer statute does not violate the fair hearing requirement of *Kent, supra.* That case held that, where the federal statute allowed the juvenile court to waive its exclusive jurisdiction over a juvenile offender after the court made a full investigation,

due process required that the court hold a hearing before waiving jurisdiction. Here, a preliminary hearing was held after which the district court found probable cause to believe that Caldwell was fourteen years of age when he committed a felony with a firearm. The essentials of due process and fair treatment required by *Kent* were satisfied.

■■■ KRS 635.020(4) does not violate the equal protection rights of Caldwell under our state or federal constitutions. Juveniles are not members of a suspect class and there is no constitutional right to be treated as a juvenile. *Cf. Commonwealth v. Howard,* Ky., 969 S.W.2d 700 (1998). The statutory classification must then be considered under the rational basis test. Where, as here, the act of the legislature does not contain a suspect classification and does not impinge on a fundamental right, the burden is on the party claiming a violation of equal protection to establish that the statutory distinction is without a rational basis. *Howard, supra.*

There is an obvious legitimate governmental interest in curtailing violent crimes by juveniles and protecting the public from harm. The decision of the legislature to further that interest by transferring certain juveniles to circuit court to be tried as adults after a finding of probable cause by the district judge is reasonably related to the pursuit of that legitimate goal. There is a rational basis for the statutory classification. It does not violate either the state or federal equal protection clauses. KRS 635.020(4) is constitutional.

## VI. Closing Argument—Penalty Phase

■■■ Caldwell contends that the prosecutor deprived him of a fair penalty trial by urging the jury to consider charges for which he had been acquitted in imposing sentence. We disagree.

The jury found Caldwell guilty of the murder of one of the victims and theft by unlawful taking over $300. He was acquitted of the murder of the second victim and of both robbery charges. During the prosecutor's closing argument in the penalty phase, the following was stated:

Comm: Now, I'm not going to go back and rehash or certainly retry charges that you've acquitted this defendant on. But I want to say this, we know that [the second victim] was killed that night. Of course we do. And I'm not going to guess on what your feelings were on that but I want to encourage you to deliberate on that a little more to this extent . . .

Def: Objection.

Comm: I am not finished.

Judge: Overruled.

Comm: [Inaudible]. We know that [the second victim] was killed that night.

Def: Objection.

Comm: We know he was killed.

Judge: Overruled.

Comm: And [Caldwell's mother] has testified that she couldn't keep him from running around with these unruly friends and that he thought that was cool. So I ask you to consider was he with one of his cool friends that night when both of these men were killed? I respect the fact that you convicted him of one count of murder and theft. I respect that, I accept that. But there was another man killed that night. He apparently was with one of the—with somebody who had a hand in there.

When the same jury sits in both parts of a bifurcated proceeding, all evidence introduced in the guilt phase of the trial is admissible in the sentencing phase. *Moore v. Commonwealth*, Ky., 771 S.W.2d 34 (1988) *overruled on other grounds by McGuire v. Commonwealth*, Ky., 885 S.W.2d 931 (1994). According to Caldwell's own testimony, both victims were killed at the same time and place. He testified that he drove the pickup truck that took the alleged perpetrators from the homicide scene; attempted to assist the perpetrators in avoiding a police roadblock; and fled into the woods to avoid police detection. Considering the wide latitude afforded prosecutors in closing argument, we find no error. *Cf. Bowling v. Commonwealth*, Ky., 873 S.W.2d 175 (1993).

VII. New Trial Motion

The trial judge did not abuse his discretion in denying the motion by Caldwell for a new trial. Whether to grant a new trial on the basis of newly discovered evidence is largely within the discretion of the trial judge, and the standard of review is whether there has been an abuse of that discretion. *Foley v. Commonwealth*, Ky., 55 S.W.3d 809 (2000). The evidence must be of such decisive value or force that it would, with reasonable certainty, change the verdict or probably change the result if a new trial was granted. *Foley, supra.*

The motion for a new trial was premised upon an affidavit from trial co-counsel alleging that the sister-in-law/girlfriend had admitted to him that she, not the defendant, had killed the victim whom Caldwell was convicted of killing. The affidavit of co-counsel was merely impeaching and insufficient to require a new trial. *See Commonwealth v. Tamme*, Ky., 83 S.W.3d 465 (2002); *Foley; Epperson v. Commonwealth*, Ky., 809 S.W.2d 835 (1990).

Reliance by Caldwell on *Boyd v. Commonwealth*, Ky., 394 S.W.2d 934 (1965), is completely without merit. In *Boyd, supra,* a new trial was granted based on an affidavit from an individual who was unavailable at trial. In that case, the affiant stated that he, not the defendant, was involved in

the crime. Here, there is no affidavit from the sister-in-law/girlfriend and not only was she available to testify at trial, she did so. Thus, *Boyd* is clearly distinguishable and not applicable.

 A defendant is entitled to one fair trial and not to a series of trials based on newly discovered evidence unless that evidence is sufficiently compelling as to create a reasonable certainty that the verdict would have been different had the evidence been available at the former trial. *Foley.* Mere hearsay evidence that a trial witness made a post-trial statement inconsistent with her previous testimony is insufficient. *Foley.* Reliance by Caldwell on *Mullins v. Commonwealth*, Ky., 375 S.W.2d 832 (1964) and *Haynes v. Commonwealth*, 304 Ky. 753, 202 S.W.2d 400 (1947), is unconvincing because there has been no miscarriage of justice here. The trial judge did not abuse his discretion in denying the motion without an evidentiary hearing or in denying the motion itself.

The judgment of conviction and sentence is affirmed and the order denying the motion for a new trial is also affirmed.

COOPER, GRAVES and JOHNSTONE, JJ., concur.

KELLER, J., concurs in part and dissents in part and is joined by LAMBERT, C.J.

STUMBO, J., dissents by separate opinion.

KELLER, Justice, concurring in part and dissenting in part.

In 2002–SC–0410–MR, Appellant's matter-of-right appeal from the Laurel Circuit Court's judgment of conviction and sentence, I concur in result only as to Parts I–V, which address Appellant's allegations of error that are relevant to his underlying convictions, but dissent as to Part VI because I agree entirely with the portion of Justice Stumbo's dissenting opinion that observes how Appellant was prejudiced by the Commonwealth's improper remarks during its KRS 532.055 Truth–in–Sentencing phase closing argument. In other words, I vote to: (1) affirm the judgment to the extent that it reflects Appellant's Murder and felony TBUT convictions, but (2) reverse the aggregate life sentence and remand the case to the trial court for a new sentencing hearing. In 2003–SC–0155–TG, Appellant's appeal from the trial court's order denying his motion for a new trial, I agree with the analysis contained in Part VII of the majority opinion, and I concur fully in the majority's disposition of that appeal.

LAMBERT, C.J., joins this opinion concurring in part and dissenting in part.

STUMBO, Justice, dissenting.

Respectfully, I must dissent. The trial court abused its discretion when it failed to grant Appellant a new trial based on newly discovered evidence in the form of an admission by Brittany Gregory that she, and not Appellant, had shot one of the victims.

Although the general rule is that a new trial should not be granted if the newly discovered evidence is merely impeaching in nature, this rule should be applied cautiously, and if the evidence is compelling enough that it probably would have induced the jury to reach a different verdict, a new trial should be granted. *Mullins v. Commonwealth*, Ky., 375 S.W.2d 832, 834 (1964) (quoting *McGregor v. Commonwealth*, Ky., 253 S.W.2d 624, 625 (1952)).

In this case, the jury obviously believed that someone other than Appellant killed one of the victims as he was acquitted of one count of murder. Brittany Gregory's statements to defense counsel put into serious doubt that Appellant was the person

who shot Clifford Schell. The jury was entitled to hear this evidence, as it was probable that the admission would have induced the jury to believe that Brittany Gregory had shot Clifford Schell rather than Appellant. This Court has not hesitated to grant a new trial when the newly discovered evidence merely impeaches a witness if it appears that a miscarriage of justice may result. *Id.* I believe this is such an instance.

In addition, the prosecutor's remarks during the penalty phase of trial asking the jury to consider the charges of which Appellant had been acquitted when imposing a sentence were prejudicial. The prosecutor asked the jury to consider that another man had been murdered that night, for which no one had been charged. The statements to this effect attempted to persuade the jury to impose the maximum sentence upon Appellant for crimes he had previously been acquitted, the implication being that Appellant had actually committed the crimes yet there was not enough evidence to convict Appellant, or that he fraternized with or possibly aided and abetted friends who did commit the crimes, and thus should be punished for "running" with the wrong crowd. These statements were prejudicial and would at the very least require remand for a new sentencing hearing.